# Exhibit A

# Part 1



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

Ms CHAITRI HAPUGALLE
    Vs.                                  C.A. No.     2014 CA 005500 B
MARK RADDATZ et al

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order.   Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to:  Judge LAURA A CORDERO
Date:   September 2, 2014
Initial Conference: 9:30 am, Friday, December 19, 2014
Location:   Courtroom A-50
          515 5th Street N.W.
          WASHINGTON, DC  20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

Chanti Hapugalle
_____
Plaintiff

vs.                                                      Case Number

Debbie (Debra) Lehan                        **14 - 0 0 0 5 5 0 0**
_____
Defendant

2014 AUG 30 P II: 26

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Chanti Hapugalle
_____
Name of Plaintiff's Attorney

Address  3014 Dent Place #24E
_____
Washington D.C. 20007
_____
Telephone

*Clerk of the Court*

By  admire Twist
_____
Deputy Clerk

Date  8/30/2014

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오      የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-682-2700) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                                                                      CASUM.doc



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Teléfono: (202) 879-1133

_____
Demandante

contra

Número de Caso: _____

_____
Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandado. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Nombre del abogado del Demandante

_____

Dirección

_____

_____

Teléfono

**SECRETARIO DEL TRIBUNAL**

Por: _____

Subsecretario

Fecha _____

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요      የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ·

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.

Si desea converser con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-682-2700) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

_Chauti Hapugalle_
_____
                                                    Plaintiff

_Atty Mark Raddatz_
_____        vs.

Case Number **14-0005500**

2014 ... 30 [2] 11:26

                                                    Defendant

## SUMMONS

To the above named Defendant:

      You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

      You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

_Chauti Hapugalle_
_____          _Clerk of the Court_
Name of Plaintiff's Attorney

                                         By  _adrienne J. mansh_
Address  _3014 Dent Place #24E_                    Deputy Clerk
         _Washington D.C. 20007_        Date  _8/30/2014_
Telephone
如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

      IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

      If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-682-2700) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                                      CASUM.doc

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

_Chanti Hayungalli_
_____
Plaintiff

vs.                                          2014   30   P 11: 26
                                             Case Number _____

_Chastleton Cooperative Assn_
_____
Defendant                    **14 - 0 0 0 5 5 0 0**

**SUMMONS**

To the above named Defendant:

  You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

  You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

_Chanti Hayungalli_
_____          _Clerk of the Court_
Name of Plaintiff's Attorney

                                        By _Adrienne J. Marsh_
Address _3014 Dent place #24 E_            Deputy Clerk
  _Washington D.C. 20007_ Date _8/30/2014_
Telephone

如需翻译,请打电话 (202) 879-4828   Veuillez appeler au (202) 879-4828 pour une traduction   Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오   አማርኛ ተርጓሚ ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

  If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-682-2700) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

  See reverse side for Spanish translation
  Vea al dorso la traducción al español

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

*Chanti Heyingalle*
_____
Plaintiff

vs.

*Keenor Management*
_____
Defendant

2014 30 P 11: 26

Case Number _____
**14 - 0 0 0 5 5 0 0**

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Chanti Heyingalle*
_____
Name of Plaintiff's Attorney

*2014 Dent place #241*
_____
Address
*Washington D.C. 20007*
_____

_____
Telephone

*Clerk of the Court*

By *Adrienne J. Masl*
_____
Deputy Clerk

Date *8/30/2014*
_____

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오    የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-682-2700) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

2014 AUG 30  P II: 26

MS.CHAITRI HAPUGALLE
3014 Dent Place, Apt 24e
Washington D.C. 20007

RECEIVED AND RETURNED
Civil Clerk's Office

SEP 0 2 2014

Superior Court of the
District of Columbia
Washington, D.C.

Plaintiff                                        :

vs.                                              :        Civil Action No.

ATTORNEY MARK RADDATZ                                     **14 - 0 0 0 5 5 0 0**
Raddatz Law Firm PLLC
1212 New York Avenue, Suite 850
Washington D.C. 20005.


MS. DEBRA (DEBBIE) LEHAN
Senior Property Manager,
Chastleton Cooperative Association and Keener Management
1701 16th Street N.W.
Washington D.C. 20009


CHASTLETON COOPERATIVE
ASSOCIATION INC.
1701 16th Street N.W.
Washington D.C. 20009


KEENER MANAGEMENT
1746 N St NW, Washington, DC 20036
                                                 :                        :
        Defendants                               :


1

## COMPLAINT

1.    Jurisdiction of the Court is founded on DC Code Annotated, 2001 Ed., as amended, Sec.

11-921, DC Code DC Code § 28-3905, and US Debt Collection Acts including § 28-3904.

### Count I: Contract Claim

2.    The Plaintiff is Singaporean national who is a DC resident, disable former coop board

member and a terminated member of the Chastleton Cooperative Association.

3.    Chastleton Cooperative Association Inc. ("Chastleton") is a Delaware incorporated, a

residential cooperative association which conveyed to Plaintiff the two coop units described

below, at 1701 16th Street N.W. Washington D.C. 20009.[1] (See exhibit 1)

4.    Defendant Keener Management ("Keener") manages the Chastleton coop units described

above.

5.    Defendant Ms. (Debra) Debbie Lehan ("Lehan") is an employee of Keener Management,

works as the Senior Property Manager for the Chastleton, and acts as an agent for

Chastleton.

6.    Defendant Attorney Mark Raddatz ("Raddatz") is a debt collector, lawyer, and agent for

Chastleton & Keener management.

7.    Plaintiff owns two Coop Units 601 and 409 at the Chastleton, subject to a certain Court

Order described below.

---

[1] Section Eight of the certification of incorporation states: The Chastleton is organized with shares and shall have members: each membership will be associated with one dwelling unit at the premises. Section nine of the states the following:  All shares are one class and each member is entitled to one vote per share Shares have $0.10 par value and the minimum number or value of shares to qualify for membership is one. All memberships shall be represented by a single share certificate. **There is no restrictions on the amount of capital owned by one members and members shall own more than one share.**

8.      Fair housing and fair debt collection claims are linked and so are the rest of the claims.

**Apartment 611**

9.      This is a matter of unclean hands.

10.     Since June 2011, the disable plaintiff has sought reasonable and financial accommodation, yet denied and forced into insolvency.

11.     The defendants tried to terminate the plaintiff's membership for apt 611 four times since November 2011 and finally succeeded despite not owing any money.

12.     On November 18, 2001, the first notice of default under occupancy agreement, opportunity to correct/cure intent to revoke proprietary documents.  According to the notice of default, for the period October 2011 to December 2011, the notice the Plaintiff had become delinquent in her payment of coop fees for a total of $7655.21. This included 6048.00 December cooperative fees of $1530.68 and attorney's fees of $275.00. In a footnote it was stated that the payment $6048 Unit 409 will serve to novate any payment due for this charge for unit 611.  (See exhibit 2) [2]

13.     The amount owed was disputed by the Plaintiff's former attorney Sowell and Attorney Sparks. Attorney Beasley also sought clarification as she had got permission for Ms. Andreas Velasquez. (See discussion under apt 409) as a lien was put on apt 611.

14.     The plaintiff was requested to turn up for a final hearing prior to termination of the membership in January 2012 as required by the by laws. Subsequently, post coop board meeting, Attorney Raddatz on behalf of the coop board submitted an unconscionable settlement

---

[2] A lien was put on apt 611 for alleged violations that took place in apt 611. Ms. Andrea Velasquez (Velasquez) stay as a long term guest been approved by both defendants Ms. Lehan and Attorney Raddatz during a meeting between the defendants and the plaintiff and her former lawyer, Attorney Donna Beasley. The plaintiff also got permission to move Ms. Velasquez personal belongings. The defendants were not able to identify the date of the violations. However, fines assessed were not by laws compliant. Moreover as the Chastleton by laws are not recorded in the recorder of deeds, none of these assessments are valid.

agreement (See exhibit 3) that violated the federal and state fair debt collection and federal and state fair housing laws and other torts.

15.    The Plaintiff filed a discrimination case with HUD. (See second claim for more details.)

16.    The defendants continued to retaliate. As threatened in the settlement letter and non-compliance and also in retaliation for filing a fair housing complaint, the plaintiff was not allowed to sublease or have roommates in any apartments and forced the disable plaintiff into insolvency.

17.    On June 26, 2012, the plaintiff was given a second notice of default under occupancy agreement, opportunity to correct/cure intent to revoke proprietary documents.

18.    For Apt 611, for the period October 2011 until June 2012, the Plaintiff became delinquent in her payment of coop fees for in the total amount of $ $7753.99, of which nonpayment of cooperative fees, late fees, and maintenance fees totaling 7341.49 (January 1, 2012 through June 30 2012 and legal fees of $412.50 for a total of $7753.99 through June 30, 2012.

19.    The Plaintiff was assessed two late charges for March 2012 which is incorrect. To correct /cure, the plaintiff was required to pay $7753.99 plus any accrued cooperative monthly fees and late fees to the cooperation by July 13, 2012.  In the event the plaintiff was not able to cure/correct the debt would result in the termination of the occupancy agreement and stock certificate. (See exhibit 4)

20.    On July 19, 2012 Ms,Lehan informed the plaintiff via email that the proprietary documents/membership of the plaintiff  had been terminated for both units. Any questions regarding this matter should be addressed to herself or Attorney Raddaz. (See exhibit 5 and attached documents exhibit 5a).

21.    Bank of America ("BofA") holds a mortgage loan to Plaintiff and a mortgage lien on Plaintiff's coop unit 611.

22.    Attorney Raddatz through third party contact and communication with Blank Rome (who was acting on behalf of Bank of America, informed them of the coops intent to revoke the membership even though he never informed the plaintiffs of such communication or verified the debt with the Plaintiff.  Instead he presented an invoice for the debt owed to Blank Rome for collection and termination. (Exhibit 6)

23.    Subsequently, on July 27, 2012, Attorney Raddatz, the debt collector informed the plaintiff that the Bank of America has asked for a payoff of fees and charges associated with the recent nonpayment termination.   As the termination was based solely on non-payment of cooperative fees and late charges (plus legal fees directly associated to the non-payment termination only), the figure provided to them is less than the plaintiffs outstanding leger balance, the board has agreed to rescind the termination of unit 611 shares should Bank of America pay off the non-payment termination associated fees and charges of $9694.79 (through August 31, 20120).

Correspondence related to this transaction are detailed below. The non-payment termination associated fees and charges potion of the ledger is attached for your reference.

24.    The plaintiff sought clarification whether the coop board would be approving roommate in the future and about the use of her apartments. (See Exhibit 6a)

25.    Blank Rome reached promised/represented to make payments on behalf of Plaintiff of her overdue condo fees for unit 611 on the condition that the Plaintiff's membership would be reinstated by the defendants in August 2012.

5

26.   On August 9, 2012, Blank Rome submitted a check for $11,098.92 which satisfied the outstanding delinquency and to prevent the termination of the proprietary lease for the plaintiff. A confirmation of the receipt of funds and the application of the funds to the outstanding balance was required, as well as a confirmation that the cooperative will not terminate the proprietary lease. See attached documents which is incorporated by reference herein. (Exhibit 7 and Exhibit 7a)

27. Attorney Raddatz credited the Plaintiff's account on August 31, 2012 per notification sent via email. "The check referenced there in will be applied to your account (unit 611) on August 31, 2012". (Exhibit 8). Defendants were thereby obligated to return Plaintiff's Chastleton membership for both units. Defendants failed to do so.

28. On September 19, 2012, the Plaintiff sought clarification from Blank Rome if they got confirmation that she will get the apt back. Again on October 12, 2012 the plaintiff contacted Blank Rome to confirm that Blank Rome got confirmation that the Chastleton will give the apt back. "Can you please send this information as things are really mess now regarding revoking membership, reinstating membership and then again trying to revoke membership" Exhibit 9).

29. Despite the plaintiff seeking proof of the return of her membership, Blank Rome, and Attorney Raddatz were not able to prove that the membership was reinstated per agreement reached between the two parties.

30. The Defendants waited a few month, refused to allow any roommates or subtenants and then once again sent the plaintiff a notice of payment default under occupancy agreement. It was a notice for non-payment of cooperative fees $ 1,404.13, late charge $70.1 subtotaling $2948.68 (September 2012 – October 2012 plus legal fees for a total of $3361.18 through October 22,

2012 (See Exhibit 9 a) Once again Blank Rome made arrangements to pay the outstanding fees See exhibit 9c).

31. The Defendants waited a few month, refused to allow any roommates or subtenants and then once again terminated a "non-reinstated" membership for the third time.

32. On January 10, 2013, amended noticed of payment default under occupancy agreement, opportunity to correct/cure intent to revoke proprietary documents was sent to the plaintiff. Non-payment of late charges and late fees of $5193.04 and fees of $412.50 was assessed for a total of $5605.54 through January 10, 2013. Default was to be corrected by January 28, 2013 or failing which the membership was to be revoked again. (See exhibit 10 and 10a)

33. While exhibit 9 C shows that the money was paid, exhibit 10a contradicts the information. The financial statement shows $70 late charges for August 2012, September and October fees and late charges again even though exhibit 9 provides evidence the money was paid by Blank Rome.

34. On January 28, 2014 the plaintiff membership and proprietary documents, and all of the rights, title, and interest of the plaintiff and asked to submit her proprietary documents by in 30 days and was signed by the secretary of the board) See exhibit 10b).

35. On February 11, 2013, Ms.Lehan sent a notice of termination of cooperative membership and a notice to quit and vacate. Failure to vacate by that date shall result in the filing of eviction action in the D.C. Superior Court. Nothing herein shall be deemed to relieve you of your obligation to pay the fair use and occupancy value for the premises through the date you vacate. Acceptance of any funds by the cooperative shall not be deemed a waiver of the termination, cancellation, or a reinstatement unless specifically agreed by the cooperative in writing. Should you have questions pl contact Ms. Lehan. ( See exhibit 11)

36. On April 17, 2013,  The Defendants filed a land lord tenant case stating that the plaintiff was a terminated cooperative member holding over and after expiration of a notice to quit pursuant to DC cod $42-3203 (Exhibit 12) and summoned to court on May 8, 2013 (Exhibit 12b)

37. Previously, the court had informed the debt collector, who is also the defendant's Attorney Raddatz not to pull out any more money without a court order. A repeat action took place without court order.

38. Once again, the debt collector and attorney  Raddatz violated court discussions undertook third party communication with Blank Rome regarding the alleged "debt owned", and once again failed verify the debt with the plaintiff.  Subsequently on April 19, Blank Rome acting on behalf of Bank of America paid another $10,841.40 which satisfied the outstanding delinquency and prevented the termination of the proprietary lease for the unit owner, bringing plaintiff account current and to provide confirmation that the funds and the application of the funds to the outstanding balance and that the cooperative will not terminate the proprietary lease. (Exhibit 13 a and exhibit 13b).

39. Attorney Raddatz produced the check only much latter even though he had received it in April 2013.  On June 7, 2013, the judge Wright ordered attorney Raddatz to cash and deposit in the court registry.

40. The plaintiff reminded the court that the defendants had failed reinstate the membership in August 2012 as a result of fraudulent misrepresentation by the debt collector Attorney Raddatz and fraudulent actions of Ms. Lehan.

41. The plaintiff now makes note that the defendants had also communicated with Blank Rome in October 2013 to secure funds, and failed to reinstate membership in October 2012.

42. In March 2014, the Defendants were able to obtain a non-redeemable judgment for apt 611 despite not having the membership reinstated after negotiating payment from Blank Rome.

43. The Plaintiff owed no money as of April 2013 (exhibit 13) although she was summoned to court in May 2013.

44. The plaintiff was evicted on May 20, 2014 as a result of fraudulent misrepresentation of financials and character regarding the plaintiff by Ms. Lehan, George Travis, former junior property manager of the Chastleton and Attorney Raddatz which is contempt of court.

45. The plaintiff lost most of her 46 years of her personal and professional belongings as the Attorney Raddatz had failed to inform the plaintiff that the defendants will be executing the writ of restitution. Prior to eviction Attorney Raddatz had informed the Plaintiff that as an " Officer of the court" he gives 24 hour notice and he had also written to say the plaintiff will not be evicted but the defendants were willing to offer a financial settlement. While the negotiations were ongoing, the plaintiff was caught off guard.

46. The defendants are aware that the plaintiff has a disability and does not have any family in the US to help her with the removal of her belongings from the road and didn't have sufficient funds and time to seek help as Atty Raddatz misrepresented that notice will be given.

47. Photographic evidence will show that Ms. Lehan and the staff of Keener management having thrown all the disable plaintiff's personal belongings on to the road, the beds and table were damaged in a way it couldn't be reconstructed or repaired. People on the road came and picked up lots of things with or without permission.  Some of the key items such as appliances were not returned from both apartments.

48. The money was released from the court registry post eviction which is illegal as the money was given to redeem the membership and post eviction the membership hasn't been   redeemed as part of a settlement pending the appeal outcome.

**Apartment 409**

49.     The defendants tried to terminate the membership for apt 409 twice and succeeded. For Apt 409 in November 18, 2011, the Plaintiff was given a Notice of default under occupancy agreement intent to revoke proprietary documents.  The plaintiff was asked to correct/cure the default for $90681 plus cooperative fees Attorney's fees $275 for December. This included the unauthorized and by laws non-compliant fees and fines related to an unauthorized move ($912.00) and for an unauthorized occupant – Andrea Velasquez even though Ms. Lehan and Attorney Raddatz had given her permission for her to stay for three months while the defendants discriminated her by rejecting her application without a valid reason. (See Exhibit 14).

50.     In June 26, 2012, the Plaintiff was given a second notice of payment default/opportunity to correct/cure/intent to revoke proprietary documents. The plaintiff was asked to correct/cure the default for $5951.84 (October 20, 2011 through June 30, 2012) including plus cooperative fees Attorney's $412.50 legal fees for a total of $6364.34.  Failure to do so would lead to the corporation taking appropriate measures to regain possession of the property. (See exhibit 15)

51.     The defendants stated that a copy was sent to National Cooperative Bank, the mortgage lender for Apt 409.  (Exhibit 15). NCB denies receiving any notification.

52.     Subsequently Ms. Lehan sent a notice to the Plaintiff. "Whereas in accordance with the Article 1, section 6 of the cooperative by laws and section 12.1 of the occupancy agreement for apt 409, notice of delinquency and an opportunity to cure was given by letters dated June 26,

2012 to Chaitri Hapugalle and NCB FSB 139 South High Street, Hillsboro, OH which is the holder of the recognition agreement for apt 409. The July 16 2012 membership was terminated and asked to vacate. (Exhibit 16).

53.     Ms. Lehan sent the plaintiff a notice to quit and vacate by August 31, 2012. Case filed on September 12 2012. Furthermore, Ms. Lehan had made false representation that NCB had been contacted. NCB confirmed via email that they were never informed a possible termination of membership. (Exhibit 17)

54.     The defendants stated that a copy was sent to National Cooperative Bank, the mortgage lender for Apt 409. (Exhibit 15).

55.     In NCB has been informed about a lien that was put on the mortgage and apt.

56. The defendants misrepresented that they had informed National Cooperative Bank (NCB) to collect money owed for apt 409. NCB confirmed they have never been informed of a terminated membership. NCB denies receiving any notification. (Exhibit 17a

57. The defendants filed for a motion for summary judgment. Ms. Lehan provided false information in the affidavit and provided fraudulent financials related to debt owed.   The affidavit stated that the debt owed was $22,852.57. This took into account financials past the date of the court filing. Protective orders were sought for the period post filing and the plaintiff was making her protective order. The amounts presented are double counting.

58. Furthermore, the defendants own historical records will show that the plaintiff did not owe any money from October until January 2012. Ms,Lehan fraudulently deleted the account statement. Furthermore, the debt of 4922.50 for October 16, 2012 can't be verified, not sent an invoice to the plaintiff or discussed with the plaintiff. 11 to January 2012 (Exhibit 19.

59. Other violations were also cited as defense.

60. Overall, Ms.Lehan and Attorney Raddatz fraudulently submitted incorrect information to the court including wrong financials and did not prevail on the summary judgment as the Plaintiff was able to show the discrepancies, violations of federal and state fair housing, fair debt collection laws and other laws related to Delaware and Washington D.C including DC housing code violations and contractual violations. (Exhibit 20). See order from Judge Natalia Combs denying the summary judgment without prejudice June 10, 2013. (See exhibit 20a).

61. The plaintiff was evicted on May 20, 2014 as a result of fraudulent misrepresentation of financials and character regarding the plaintiff by Ms. Lehan, George Travis, former junior property manager of the Chastleton and Attorney Raddatz which is contempt of court.

62. The plaintiff lost most of her 46 years of her personal and professional belongings as the Attorney Raddatz had failed to inform the plaintiff that the defendants will be executing the writ of restitution. Prior to eviction Attorney Raddatz had informed the Plaintiff that as an " Officer of the court" he gives 24 hour notice and he had also written to say the plaintiff will not be evicted but the defendants were willing to offer a financial settlement. While the negotiations were ongoing, the plaintiff

63. On April 30, 2014 an order granting motion to release funds from the court registry was entered on the docket.

64. On 7/28/2014 Order to disburse protective order fund entered on the docket.

65. On July 28, 2014 the court order was given to disburse protective order funds.

66. Defendants breached their contracts for both units/apt 611 and 409 with Plaintiff as described above, which has cause consequential damages to Plaintiff in the amount of at least $250,000.

67.     **Count II -- federal Fair Housing Act (FHA) (42 USC § 3601 et seq.).Fair Housing Act. Title VIII of the Civil Rights Act of 1968, as amended** prohibits discrimination in housing on the basis of race, color, religion, sex, national origin, familial status, and disability.[3] One type of disability discrimination prohibited by the Act is the refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a person with a disability the equal opportunity to use and enjoy a dwelling.[4] In November 2008, the plaintiff was injured in a car accident and related criminal assault. The plaintiff sustained serious injuries. At all times, the plaintiff kept the defendants[5] informed of her medical conditions.   At all times, the plaintiff maintained cordial relationships with the defendants. However, the relationship between Ms. Debbie Lehan, the senior property manager, the former Keener property manager, staff and plaintiff had deteriorated since a theft that occurred in 2010.   When the plaintiff made a complaint, the senior property manager, Ms.

---

[3] 2 The Act uses the term "handicap" instead of the term "disability." Both terms have the same legal meaning. See Bragdon v. Abbott, 524 U.S. 624, 631 (1998) (noting that definition of "disability" in the Americans with Disabilities Act is drawn almost verbatim "from the definition of 'handicap' contained in the Fair Housing Amendments Act of 1988"). This document uses the term "disability," which is more generally accepted.

[4] 3 42 U.S.C. § 3604(f)(3)(B).

[5] However Attorney Mark Raddatz, defendant was kept informed of the medical conditions only beginning June 2011 as he had only recently appointed the Attorney and also working as a debt collector for the Chastleton Cooperative Association. However, he was already working for Keener Management prior to June 2011.

Debbie (Debra) Lehan, (Keener Management) also working as managing agent for the Chastleton Cooperative Board), informed the plaintiff that the maintenance staff had entered the apartment, despite not having an appointment for that day.  More importantly, no maintenance was done. As suspected, this was an illegal entry. The police intervened to investigate. In retaliation, one of the defendants, Ms. Lehan, despite not having any authority to discuss subleasing, accused the plaintiff of illegally subleasing to distract the key issue – the theft. Subsequently, police involvement led to a deteriorating relationship between the senior property managers, the junior property manager, Paul Hallam, the former Operations manager Mike Sica. The Chastleton cooperative board failed to investigate this matter in full, and the sublet committee never fined the plaintiff for illegal subleasing, despite Ms. Lehan's accusations. In fact, the plaintiff has never been fined for illegal subleasing from the time of the purchase in 2006 and 2007. If even the plaintiff illegally subleased, the Chasleton has not recorded their by-laws in the recorder of deeds office (Exhibit 21) in Washington D.C. and nullifies any claims of illegal subleasing. See discussion below regarding recordation and supporting case law.

68.    With the help of the joint attorney for the Chastleton cooperative association and Keener management, Attorney Mark Raddatz, who also acted as a debt collector, the defendants interfered with the plaintiff's contractual agreement in retaliation and due to discriminatory practices.

69.    On June 16, 2011, Ms. Lehan informed the plaintiff she could benefit from having two roommates, but never allowed her to comply due to imposition of rigorous conditions post purchase of the shares.  (Exhibit 22). Prior to June 2011, the staff of keener was fully aware where the Plaintiff's roommates/subtenants lived (apt 611) In fact George Travis in his email refers to the 2 occupants as sub tenants. (Exhibit 22a)

70.     Over the period of June 2011 until the trial in January 2014, the plaintiff has been prevented from quiet use and enjoyment of the apartments, the ability to benefit from financial accommodation income from two roommates, subtenants, occupants, and reasonable accommodation in terms of having a bed in at 409 since June 2011. (See Attorney Beasley exhibit 23) (See Douglas Sparks Letter Exhibit 24), Plaintiff email sent to Attorney Raddatz Sept 26, 2012) Exhibit 26 Attorney Gary Brown Exhibit 27 and response from Attorney Raddatz exhibit 27a.

71.     Retaliation is also evident as the Plaintiff filed a fair housing complaint with both HUD and DCOHR. Since then, the defendants forcefully and deliberately violated the fair debt collection act and other laws to force the plaintiff out the Chastleton. Overall, the defendants outright rejected the fair housing complaints posed by both the plaintiff and her former Attorneys when the executed the writ of restitution in May 2014.


72.     **Selective enforcement/Discrimination– Fair housing.**  Selective enforcement is evident as the Caucasians who were or are multiple unit holders are not harassed or imposed rigid terms and conditions.  Both Ms Durana and Lisa Manning is known or appears to violate rules in different ways or allowed to violate rules. Perhaps a blind eye is been cast by the property managers and the coop board.


73.     The subleasing law is very clear and outlined in the occupancy agreement article 1V section 4.1 sub section A and delineated in the house rules. Ms Durana (owner of apartments 244 and 442 are allowed to live in Europe, and sublease apts. While immediate family members of the shareholder are permitted to reside in the unit and the owner has to live with them. This is

clearly a violation as the member has to live with the family no matter what in order not to be considered subleasing, but Ms.Lehan testified that Ms.Durana uses the apt only as a pied a terre and lives out of the country and she is not aware as to when Ms.Durana lives in the Chastleton and how often and when she comes. However the plaintiff testified that she is a witness to others apart from family members living in one of Ms.Durana's apartment and to check with the security.

74. On another matter, Lisa Manning actually violated the coop board requirements and were penalized but no liens were put in both apartments and membership terminated. However, the plaintiff who never violated was illegally fined and liens put on both apartment and invited to terminated membership but then put onerous conditions and provided unconscionable settlement agreement eventually forcing the defendant into insolvency. This is already discussed and testified. Ms. Lehan testified that Ms. Lisa Manning's father was a judge and he came to discuss matter and intimidated Ms. Lehan. Ms Lehan testified that the fees and fines were finally dropped. However, after holding the plaintiff in captivity" for not paying "alleged fees and fines" resulting in the denial of roommates and sub tenants, finally the truth came out and evidence of outright bias and discrimination.

75. Most importantly, only in 2014 at the trail did the defendants finally admit that the fees and fines related to Ms. Andrea Velasquez have been removed. However, this was one of the key conditions denial of roommate and sub tenant income since Ms. Velasquez was approved as a three month guest despite outright rejection of her roommate application. This alleged fees and

fines were used as a pretext to deny the plaintiff of quiet use and enjoyment of the apartments and to benefit from fair housing laws and not fall prey to illegal fair debt collection practices.

76.    Given that the bylaws are not recorded in the recorder of deeds office in Washington D.C. none of the above accusations of illegal subleasing or any house rule violations are valid and nullifies all claims put forth by the defendants.

77.    The plaintiff has successfully been able to reopen the case related to her injuries in the civil court and seeking to claim lost wages that was not afforded during the jury trial due to error made by the judge.


**Count 111: Harassment and Defamation Based on the above statements and statements below.**

78.    **Violation of jurisdictional law-**Key jurisdictional law are not followed and undisputedly justifies the need to dismiss the cases outright. Most important, the Defendants failed to produce a certificate of authority at the trial. Most important, in light of been a foreign corporation, in this case the Chastleton's failure to produce certificate of authority required by the District of Columbia statute in order for foreign corporation to bring action in District of Columbia Court,' and corporation's failure to even argue that it was permitted under the statute to bring lawsuit in District of Columbia as a foreign corporation, the Chastleton's claims would have to be dismissed even if court had subject matter jurisdiction over them. DC code 1981 29-399.20 (a) ILC Corp v Latino Newspaper, Inc 747 F. Suppl 85 1990 U.S. dist. LEXIS 13362 (1990)

79.    **Even if a certificate of Authority was granted by the corporation Division, the Certificate is inappropriately granted as the organization was not completed according to the terms of the Delaware statute by filing its By-Laws at the DC Recorder of Deeds Office.**

Watergate South, Inc. v. Duty, 464 A.2d 141 (D.C. 1983). Watergate South, Inc. v. Duty, 464 A.2d 141 (D.C. 1983)

80.   **Violations of Delaware State laws pertaining to foreign cooperatives and recordation of bylaws.**  The Chastleton cooperative association is a cooperative registered in Delaware, the Delaware laws applies on the validity of the by-laws. Title 81-SEC, 103 (38) requires Delaware cooperative Associations to record by-laws in the county where the property is located with the recorder of deeds office.

81.   The plaintiff asserts that she has searched the District of Columbia Recorder of Deeds office public filings.  Defendant asserts that the By-Laws of the Cooperative are not on file or recorded with the District of Columbia Recorder of Deeds.  Defendant argues, therefore, that the By-Laws are not in effect.  As the Chastleton By-laws are not recorded with the recorder of deeds office in Washington DC and nullifies all by laws including house rules and any claims of illegal subleasing.  The Chastleton Cooperative Association have not followed the Delaware Rules of incorporation as the cooperative association's by laws are not recorded in the recorder of deeds office and therefore not  doing business in the DC legitimately. Under Delaware law, the use of word "county" is irrelevant.  Washington D.C. operates as a county, state and municipality.  More importantly, the intent of the statute is by-laws be recorded with the local recorder of deeds and that people are given notification of the cooperative association's by laws. In these two cases, the cooperative has not registered the by-laws. Thus the by-laws are not valid and no provision of the by-laws may be used against the plaintiff in any way. Snowden v Benning Heights CO-OP., INC., 557 A.2d 151 (D.C. 1989).

82.    **Violations of Washington D.C. Housing Code and Laws related to the Termination of Cooperative Membership.**  The defendant tried to terminate the membership of the plaintiff three times. First time she was still solvent. More importantly, are three notices were given based on fraudulent information presented to the defendant and the court. This is contempt of court. In accordance with a 1984 amendment, D.C. Code § 29-1141 (1988 Supp.), the termination of plaintiff's membership without a vote of the membership was unlawful because the cooperative association did not follow the procedures authorized by the laws of the state in which it is incorporated. The plaintiff argues that the defendant – Chastleton Cooperative association have not complied with the organizational requirements of the Delaware code 81, and the actions alleged by defendant to have been taken by its Board of Directors are beyond the authority of its organic documents, as those documents have not been properly brought into effect. There is no validly existing or duly constituted Board according to the authority of DE Code section 81.

83.    The Plaintiff alleges that she was not served with a Notice of Payments (Three of them mentioned above) in accordance with the By-Laws of the Cooperative as the association's by-laws be recorded at the recorder of deeds office. See, DE Code section 81-103(38).  DC code – All filings for District of Columbia should be recorded in the recorder of deeds office in Wash D.C.

84.    The plaintiff alleges that not all of the addition fines and fees shown on the ledger attached to Defendants financial Statement are solely and directly attributable to her alleged non-payment of cooperative fees.

85.    **Senior Property Manager Ms. Debbie Lehan was not licensed and illegally working as a Property Manager until late 2012.** Since the time of the conversion, from 2006 until July

2012, Ms. Debbie Lehan, Senior property manager was illegally employed by Keener Management and also illegally working as a managing agent for the Chastleton Cooperative Association. Ms.Lehan had no authority to discuss roommates, sublets, correspond on behalf of Keener Management or the Chastleton Cooperative, and most importantly issue notice several notices of default and cure and termination as she has no license to practice as a Managing Agent and a Senior Property Manager for the Keener Management at least until July 2012. Ms. Lehan did not produce a copy of the license during the request for interrogatories or production of documents for both apartments. Ms.Lehan also admitted to DCOHR in May 2012 that she doesn't have a license, but have some certification which is not enough to meet the DC or Delaware code requirements.   Subsequently Ms.Lehan a photocopy to show that she had a license only since 07/30/2012. (See exhibit 28). She was not qualified to work, nor represent the Chastleton as an agent nor harass and defame the plaintiff or have anything to do with subtenants or roommate applications and decisions.

86.    Defendants failed and refused and violated the FDCPA DCDCPA and the Federal and Fair housing acts and committed other torts.

87.    Plaintiff seeks Jury Trial

88.    THEREFORE Plaintiff prays that it order Defendants to cause the reinstate her Chastleton membership, awards damages to Plaintiff in the amount of $ 2 Million, attorneys' fees, treble damages, punitive and compensatory damages and to enjoin the defendants from undertaking similar actions in the future.

Respectfully submitted,

Ms. Chaitri Hapugalle, Pro Se

3014 Dent Place, apt 24e
Washington D.C. 20007.
Tele: 202 286-9085

**Exhibits**

Exhibit 1: Section nine of the certificate of incorporation.

Exhibit 2: Apt 611 - First notice of Default/Cure/Intent to Revoke Proprietary Documents Nov 18, 2011

Exhibit 2a: Attorney Raddatz Invoice – Legal fees incurred from 06/02/2011-09/26/11

Exhibit 3: Settlement letter given by Attorney Raddatz on behalf of the Coop board on January 2012 which spells out fair debt collection and fair housing violations.

Exhibit 4: Apt 611-Second notice of Default/Cure/Intent to Revoke Proprietary Documents June 26, 2012

Exhibit 4a: Financial supporting exhibit 4.

Exhibit 5 Ms.Lehan informing the Plaintiff that the board has terminated the proprietary documents for apts 409 and apt 611.

Exhibit 5a: Terminating proprietary documents for apt 611 and threat of law suit signed by Wendy Schumacher 07/18/12 including financials.

Exhibit 6. An Email from Attorney Raddaz informing the plaintiff that Bank of America has asked for a payoff of fees and charges associated with the account and the board was willing to rescind the termination. July 27, 2012.

Exhibit 7: Letter sent by Blank Rome acting on behalf of Bank of America to Attorney Raddatz stating a check is enclosed for $11, 098.92 to satisfies the delinquency and prevent the termination of the proprietary lease for the unit owner The letter also seeks confirmation that the cooperative will not terminate membership.

Exhibit 8:

Exhibit 9a-Plaintiff informs Blank Rome she has been notified that her membership will be revoked again (Third time) for non-payment and she is waiting for confirmation from Blank Rome that they give the plaintiff's membership back.

22

Exhibit 9b-Notice of payment default under occupancy agreement, opportunity to correct or cure and Intent to Revoke Proprietary Documents October 9, 2012.

Exhibit 9c: Blank Rome makes arrangements to have the fund to cure default and secure their interests. October 16, 2012

Exhibit 10: Forth notice of Default/Cure/Intent First notice of Default/Cure/Intent to Revoke Proprietary Documents Nov 18, 2011

Exhibit 10a: Fourth notice of Default/Cure/Intent to Revoke Proprietary Documents Nov 18, 2011

Exhibit 10 b Chastleton cooperation association resolution to terminating proprietary documents for Apt 611.

Exhibit 11: Fourth Notice of termination of Cooperative membership and notice to quit and vacate.

Exhibit 12: Complaint/case filed with the land lord tenant court for possession of Apt 611 filed on April 17, 2013.

Exhibit 12b: Summons to appear in court on May 8, 2013.

Exhibit 13a: April 19 letter and check sent by Blank Rome acting on behalf of Bank of America for $10, 841.40

Exhibit 13 b – Check for $ 10, 841.40 from Blank Rome.

Exhibit 14: Apt 409 first notice of Default/Cure/Intent to Revoke Proprietary Documents Nov 18, 2011e

Exhibit 15: Apt 409: Second notice of Default/Cure/Intent to Revoke Proprietary Documents June 26, 2012

Exhibit 16: Apt 409: Second notice Chastleton cooperation association resolution to terminating proprietary documents for Apt 611.

Exhibit 17: Apt 409 Second notice of termination of Cooperative membership and notice to quit and vacate.

Exhibit 17a: NCB informs via email that the Defendants have not informed of any liens placed on the unit nor that they have cancelled the membership.

Exhibit 18: Affidavit from Ms.Lehan containing false information and financials.

Exhibit 19: Financials attached to the affidavit (Exhibit 18)

Exhibit 20 Plaintiff's opposition to summary judgment. Filed June 04, 2013. Pl note Plaintiff was a defendant in the land lord case 2012 LTB 24570

Exhibit 20 a: Judge Natalia Combs denying the Defendants motion for summary judgment on June 10, 2013.

Exhibit 21 Records from Recorder of Deeds Office to show that the Defendants have not registered the by-laws for the Chastleton signed by the recorder of deeds.

Exhibit 22 Email sent by Ms. Lehan on June 16, 2011 that the coop board had agreed for the plaintiff to have two roommates on the condition that it is used as a primary residence and unit 409 can only be used exclusively as an office and neither roommates nor guests will be permitted.

Exhibit 22 a – Email sent by George Travis regarding the Plaintiff's subtenants living in apt 611. April 24, 2009.

Exhibit 23:   Email sent by Attorney Raddatz to Attorney Beasley – plaintiff former lawyer regarding the knowledge of disability, violations and fees, sublets, roommates.

Exhibit 24 Letter from Douglas Sparks – Regarding reasonable accommodation and financial accommodation – roommate/subleasing income/disability.

Exhibit 26 – Email sent by Plaintiff regarding subleasing, mortgage issues and options.

Exhibit 27: Email sent by Attorney Gary Brown on behalf of the Plaintiff – reasonable accommodation – date October 8, 2013.

Exhibit 27 A: Response to Attorney Brown sent by Attorney Raddatz. October 15, 2013

Exhibit 28:   Proof to show that Ms. Lehan was illegally working as a property manager as she was not licensed to work until 07/30/2012.

**Certificate of Service**

On August 30, 2014 after I file the complaint with the D.C. Superior Court, I will post copies of the complaint, the information sheet and copies of the summons to the following defendant's certified first class service.

ATTORNEY MARK RADDATZ
Raddatz Law Firm PLLC
1212 New York Avenue, Suite 850
Washington D.C. 20005

MS. DEBRA (DEBBIE) LEHAN
Senior Property Manager,
Chastleton Cooperative Association
and Keener Management
1701 16th Street N.W.
Washington D.C. 20009

CHASTLETON COOPERATIVE
ASSOCIATION INC.
1701 16th Street N.W.
Washington D.C. 20009

KEENER MANAGEMENT
1746 N St NW,
Washington, DC 20036

26

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA


Ms. CHAITRI HAPUGALLE                              :
3014 Dent Place, Apt 24E                           :
Washington D.C. 20007                              :


      Plaintiff                                :

vs.                                                :        Civil Action No.


ATTORNEY MARK RADDATZ                               :
Raddatz Law Firm PLLC                               :
1212 New York Avenue, Suite 850                     :
Washington D.C. 20005                               :

                                                    :
MS. DEBRA (DEBBIE) LEHAN                             :
Senior Property Manager,                            :
Chastleton Cooperative Association                  :
and Keener Management                               :
1701 16th Street N.W.                          :
Washington D.C. 20009                               :
                                                    :


CHASTLETON COOPERATIVE                              :
ASSOCIATION INC.                                    :
1701 16th Street N.W.                          :
Washington D.C. 20009                               :
                                                    :


KEENER MANAGEMENT                                   :
1746 N St NW,
Washington, DC 20036                                :
                                                    :
                                                    :
      Defendants                               :

# COMPLAINT

1.  Jurisdiction of the Court is founded on DC Code Annotated, 2001 Ed., as amended, Sec. 11-921, DC Code DC Code § 28-3905, and US Debt Collection Acts including § 28-3904.

## Count I: Contract Claim

2.  The Plaintiff is Singaporean national who is a DC resident, disable former coop board member and a terminated member of the Chastleton Cooperative Association.

3.  Chastleton Cooperative Association Inc. ("Chastleton") is a Delaware incorporated, a residential cooperative association which conveyed to Plaintiff the two coop units described below, at 1701 16th Street N.W. Washington D.C. 20009.[1] (See exhibit 1)

4.  Defendant Keener Management ("Keener") manages the Chastleton coop units described above.

5.  Defendant Ms. (Debra) Debbie Lehan ("Lehan") is an employee of Keener Management, works as the Senior Property Manager for the Chastleton, and acts as an agent for Chastleton.

6.  Defendant Attorney Mark Raddatz ("Raddatz") is a debt collector, lawyer, and agent for Chastleton & Keener management.

7.  Plaintiff owns two Coop Units 601 and 409 at the Chastleton, subject to a certain Court Order described below.

---

[1] Section Eight of the certification of incorporation states: The Chastleton is organized with shares and shall have members: each membership will be associated with one dwelling unit at the premises. Section nine of the states the following: All shares are one class and each member is entitled to one vote per share Shares have $0.10 par value and the minimum number or value of shares to qualify for membership is one. All memberships shall be represented by a single share certificate. **There is no restrictions on the amount of capital owned by one members and members shall own more than one share.**

8.     Fair housing and fair debt collection claims are linked and so are the rest of the claims.

**Apartment 611**

9.     This is a matter of unclean hands.

10.    Since June 2011, the disable plaintiff has sought reasonable and financial accommodation, yet denied and forced into insolvency.

11.    The defendants tried to terminate the plaintiff's membership for apt 611 four times since November 2011 and finally succeeded despite not owing any money.

12.    On November 18, 2001, the first notice of default under occupancy agreement, opportunity to correct/cure intent to revoke proprietary documents.  According to the notice of default, for the period October 2011 to December 2011, the notice the Plaintiff had become delinquent in her payment of coop fees for a total of $7655.21. This included 6048.00 December cooperative fees of $1530.68 and attorney's fees of $275.00. In a footnote it was stated that the payment $6048 Unit 409 will serve to novate any payment due for this charge for unit 611.  (See exhibit 2) [2]

13.    The amount owed was disputed by the Plaintiff's former attorney Sowell and Attorney Sparks. Attorney Beasley also sought clarification as she had got permission for Ms. Andreas Velasquez. (See discussion under apt 409) as a lien was put on apt 611.

14.    The plaintiff was requested to turn up for a final hearing prior to termination of the membership in January 2012 as required by the by laws. Subsequently, post coop board meeting, Attorney Raddatz on behalf of the coop board submitted an unconscionable settlement

---

[2] A lien was put on apt 611 for alleged violations that took place in apt 611. Ms. Andrea Velasquez (Velasquez) stay as a long term guest been approved by both defendants Ms. Lehan and Attorney Raddatz during a meeting between the defendants and the plaintiff and her former lawyer, Attorney Donna Beasley. The plaintiff also got permission to move Ms. Velasquez personal belongings. The defendants were not able to identify the date of the violations. However, fines assessed were not by laws compliant. Moreover as the Chastleton by laws are not recorded in the recorder of deeds, none of these assessments are valid.

agreement (See exhibit 3) that violated the federal and state fair debt collection and federal and state fair housing laws and other torts.

15.    The Plaintiff filed a discrimination case with HUD. (See second claim for more details.)

16.    The defendants continued to retaliate. As threatened in the settlement letter and non-compliance and also in retaliation for filing a fair housing complaint, the plaintiff was not allowed to sublease or have roommates in any apartments and forced the disable plaintiff into insolvency.

17.    On June 26, 2012, the plaintiff was given a second notice of default under occupancy agreement, opportunity to correct/cure intent to revoke proprietary documents.

18.    For Apt 611, for the period October 2011 until June 2012, the Plaintiff became delinquent in her payment of coop fees for in the total amount of $ $7753.99, of which nonpayment of cooperative fees, late fees, and maintenance fees totaling 7341.49 (January 1, 2012 through June 30 2012 and legal fees of $412.50 for a total of $7753.99 through June 30, 2012.

19.    The Plaintiff was assessed two late charges for March 2012 which is incorrect. To correct /cure, the plaintiff was required to pay $7753.99 plus any accrued cooperative monthly fees and late fees to the cooperation by July 13, 2012.  In the event the plaintiff was not able to cure/correct the debt would result in the termination of the occupancy agreement and stock certificate. (See exhibit 4)

20.    On July 19, 2012 Ms,Lehan informed the plaintiff via email that the proprietary documents/membership of the plaintiff  had been terminated for both units. Any questions regarding this matter should be addressed to herself or Attorney Raddaz. (See exhibit 5 and attached documents exhibit 5a).

21.     Bank of America ("BofA") holds a mortgage loan to Plaintiff and a mortgage lien on Plaintiff's coop unit 611.

22.     Attorney Raddatz through third party contact and communication with Blank Rome (who was acting on behalf of Bank of America, informed them of the coops intent to revoke the membership even though he never informed the plaintiffs of such communication or verified the debt with the Plaintiff.  Instead he presented an invoice for the debt owed to Blank Rome for collection and termination. (Exhibit 6)

23.     Subsequently, on July 27, 2012, Attorney Raddatz, the debt collector informed the plaintiff that the Bank of America has asked for a payoff of fees and charges associated with the recent nonpayment termination.   As the termination was based solely on non-payment of cooperative fees and late charges (plus legal fees directly associated to the non-payment termination only), the figure provided to them is less than the plaintiffs outstanding leger balance, the board has agreed to rescind the termination of unit 611 shares should Bank of America pay off the non-payment termination associated fees and charges of $9694.79 (through August 31, 20120).

Correspondence related to this transaction are detailed below. The non-payment termination associated fees and charges potion of the ledger is attached for your reference.

24.     The plaintiff sought clarification whether the coop board would be approving roommate in the future and about the use of her apartments. (See Exhibit 6a)

25.     Blank Rome reached promised/represented to make payments on behalf of Plaintiff of her overdue condo fees for unit 611 on the condition that the Plaintiff's membership would be reinstated by the defendants in August 2012.

26.    On August 9, 2012, Blank Rome submitted a check for $11,098.92 which satisfied the outstanding delinquency and to prevent the termination of the proprietary lease for the plaintiff. A confirmation of the receipt of funds and the application of the funds to the outstanding balance was required, as well as a confirmation that the cooperative will not terminate the proprietary lease. See attached documents which is incorporated by reference herein. (Exhibit 7 and Exhibit 7a)

27. Attorney Raddatz credited the Plaintiff's account on August 31, 2012 per notification sent via email. "The check referenced there in will be applied to your account (unit 611) on August 31, 2012". (Exhibit 8). Defendants were thereby obligated to return Plaintiff's Chastleton membership for both units. Defendants failed to do so.

28. On September 19, 2012, the Plaintiff sought clarification from Blank Rome if they got confirmation that she will get the apt back. Again on October 12, 2012 the plaintiff contacted Blank Rome to confirm that Blank Rome got confirmation that the Chastleton will give the apt back. "Can you please send this information as things are really mess now regarding revoking membership, reinstating membership and then again trying to revoke membership" Exhibit 9).

29. Despite the plaintiff seeking proof of the return of her membership, Blank Rome, and Attorney Raddatz were not able to prove that the membership was reinstated per agreement reached between the two parties.

30. The Defendants waited a few month, refused to allow any roommates or subtenants and then once again sent the plaintiff a notice of payment default under occupancy agreement. It was a notice for non-payment of cooperative fees $ 1,404.13, late charge $70.1 subtotaling $2948.68 (September 2012 – October 2012 plus legal fees for a total of $3361.18 through October 22,

6

2012 (See Exhibit 9 a) Once again Blank Rome made arrangements to pay the outstanding fees See exhibit 9c).

31. The Defendants waited a few month, refused to allow any roommates or subtenants and then once again terminated a "non-reinstated" membership for the third time.

32. On January 10, 2013, amended noticed of payment default under occupancy agreement, opportunity to correct/cure intent to revoke proprietary documents was sent to the plaintiff. Non-payment of late charges and late fees of $5193.04 and fees of $412.50 was assessed for a total of $5605.54 through January 10, 2013. Default was to be corrected by January 28, 2013 or failing which the membership was to be revoked again. (See exhibit 10 and 10a)

33. While exhibit 9 C shows that the money was paid, exhibit 10a contradicts the information. The financial statement shows $70 late charges for August 2012, September and October fees and late charges again even though exhibit 9 provides evidence the money was paid by Blank Rome.

34. On January 28, 2014 the plaintiff membership and proprietary documents, and all of the rights, title, and interest of the plaintiff and asked to submit her proprietary documents by in 30 days and was signed by the secretary of the board) See exhibit 10b).

35. On February 11, 2013, Ms.Lehan sent a notice of termination of cooperative membership and a notice to quit and vacate. Failure to vacate by that date shall result in the filing of eviction action in the D.C. Superior Court. Nothing herein shall be deemed to relieve you of your obligation to pay the fair use and occupancy value for the premises through the date you vacate. Acceptance of any funds by the cooperative shall not be deemed a waiver of the termination, cancellation, or a reinstatement unless specifically agreed by the cooperative in writing. Should you have questions pl contact Ms. Lehan. ( See exhibit 11)

7

36. On April 17, 2013,  The Defendants filed a land lord tenant case stating that the plaintiff was a terminated cooperative member holding over and after expiration of a notice to quit pursuant to DC cod $42-3203 (Exhibit 12) and summoned to court on May 8, 2013 (Exhibit 12b)

37. Previously, the court had informed the debt collector, who is also the defendant's Attorney Raddatz not to pull out any more money without a court order. A repeat action took place without court order.

38. Once again, the debt collector and attorney  Raddatz violated court discussions undertook third party communication with Blank Rome regarding the alleged "debt owned", and once again failed verify the debt with the plaintiff.  Subsequently on April 19, Blank Rome acting on behalf of Bank of America paid another $10,841.40 which satisfied the outstanding delinquency and prevented the termination of the proprietary lease for the unit owner, bringing plaintiff account current and to provide confirmation that the funds and the application of the funds to the outstanding balance and that the cooperative will not terminate the proprietary lease. (Exhibit 13 a and exhibit 13b).

39. Attorney Raddatz produced the check only much latter even though he had received it in April 2013.  On June 7, 2013, the judge Wright ordered attorney Raddatz to cash and deposit in the court registry.

40. The plaintiff reminded the court that the defendants had failed reinstate the membership in August 2012 as a result of fraudulent misrepresentation by the debt collector Attorney Raddatz and fraudulent actions of Ms. Lehan.

41. The plaintiff now makes note that the defendants had also communicated with Blank Rome in October 2013 to secure funds, and failed to reinstate membership in October 2012.

42. In March 2014, the Defendants were able to obtain a non-redeemable judgment for apt 611 despite not having the membership reinstated after negotiating payment from Blank Rome.

43. The Plaintiff owed no money as of April 2013 (exhibit 13) although she was summoned to court in May 2013.

44. The plaintiff was evicted on May 20, 2014 as a result of fraudulent misrepresentation of financials and character regarding the plaintiff by Ms. Lehan, George Travis, former junior property manager of the Chastleton and Attorney Raddatz which is contempt of court.

45. The plaintiff lost most of her 46 years of her personal and professional belongings as the Attorney Raddatz had failed to inform the plaintiff that the defendants will be executing the writ of restitution. Prior to eviction Attorney Raddatz had informed the Plaintiff that as an " Officer of the court" he gives 24 hour notice and he had also written to say the plaintiff will not be evicted but the defendants were willing to offer a financial settlement. While the negotiations were ongoing, the plaintiff was caught off guard.

46. The defendants are aware that the plaintiff has a disability and does not have any family in the US to help her with the removal of her belongings from the road and didn't have sufficient funds and time to seek help as Atty Raddatz misrepresented that notice will be given.

47. Photographic evidence will show that Ms. Lehan and the staff of Keener management having thrown all the disable plaintiff's personal belongings on to the road, the beds and table were damaged in a way it couldn't be reconstructed or repaired. People on the road came and picked up lots of things with or without permission.  Some of the key items such as appliances were not returned from both apartments.

48. The money was released from the court registry post eviction which is illegal as the money was given to redeem the membership and post eviction the membership hasn't been   redeemed as part of a settlement pending the appeal outcome.


**Apartment 409**

49.     The defendants tried to terminate the membership for apt 409 twice and succeeded. For Apt 409 in November 18, 2011, the Plaintiff was given a Notice of default under occupancy agreement intent to revoke proprietary documents.  The plaintiff was asked to correct/cure the default for $90681 plus cooperative fees Attorney's fees $275 for December. This included the unauthorized and by laws non-compliant fees and fines related to an unauthorized move ($912.00) and for an unauthorized occupant – Andrea Velasquez even though Ms. Lehan and Attorney Raddatz had given her permission for her to stay for three months while the defendants discriminated her by rejecting her application without a valid reason. (See Exhibit 14).

50.     In June 26, 2012, the Plaintiff was given a second notice of payment default/opportunity to correct/cure/intent to revoke proprietary documents. The plaintiff was asked to correct/cure the default for $5951.84 (October 20, 2011 through June 30, 2012) including plus cooperative fees Attorney's fees $412.50 legal fees for a total of $6364.34.  Failure to do so would lead to the corporation taking appropriate measures to regain possession of the property. (See exhibit 15)

51.     The defendants stated that a copy was sent to National Cooperative Bank, the mortgage lender for Apt 409.  (Exhibit 15). NCB denies receiving any notification.

52.     Subsequently Ms. Lehan sent a notice to the Plaintiff. "Whereas in accordance with the Article 1, section 6 of the cooperative by laws and section 12.1 of the occupancy agreement for apt 409, notice of delinquency and an opportunity to cure was given by letters dated June 26,

2012 to Chaitri Hapugalle and NCB FSB 139 South High Street, Hillsboro, OH which is the holder of the recognition agreement for apt 409. The July 16 2012 membership was terminated and asked to vacate. (Exhibit 16).

53.    Ms. Lehan sent the plaintiff a notice to quit and vacate by August 31, 2012. Case filed on September 12 2012. Furthermore, Ms. Lehan had made false representation that NCB had been contacted. NCB confirmed via email that they were never informed a possible termination of membership. (Exhibit 17)

54.    The defendants stated that a copy was sent to National Cooperative Bank, the mortgage lender for Apt 409. (Exhibit 15).

55.    In NCB has been informed about a lien that was put on the mortgage and apt.

56. The defendants misrepresented that they had informed National Cooperative Bank (NCB) to collect money owed for apt 409. NCB confirmed they have never been informed of a terminated membership. NCB denies receiving any notification. (Exhibit 17a

57. The defendants filed for a motion for summary judgment. Ms. Lehan provided false information in the affidavit and provided fraudulent financials related to debt owed.    The affidavit stated that the debt owed was $22,852.57. This took into account financials past the date of the court filing. Protective orders were sought for the period post filing and the plaintiff was making her protective order. The amounts presented are double counting.    .

58. Furthermore, the defendants own historical records will show that the plaintiff did not owe any money from October until January 2012. Ms,Lehan fraudulently deleted the account statement. Furthermore, the debt of 4922.50 for October 16, 2012 can't be verified, not sent an invoice to the plaintiff or discussed with the plaintiff. 11 to January 2012 (Exhibit 19.

59. Other violations were also cited as defense.

60. Overall, Ms.Lehan and Attorney Raddatz fraudulently submitted incorrect information to the court including wrong financials and did not prevail on the summary judgment as the Plaintiff was able to show the discrepancies, violations of federal and state fair housing, fair debt collection laws and other laws related to Delaware and Washington D.C including DC housing code violations and contractual violations. (Exhibit 20). See order from Judge Natalia Combs denying the summary judgment without prejudice June 10, 2013. (See exhibit 20a).

61. The plaintiff was evicted on May 20, 2014 as a result of fraudulent misrepresentation of financials and character regarding the plaintiff by Ms. Lehan, George Travis, former junior property manager of the Chastleton and Attorney Raddatz which is contempt of court.

62. The plaintiff lost most of her 46 years of her personal and professional belongings as the Attorney Raddatz had failed to inform the plaintiff that the defendants will be executing the writ of restitution. Prior to eviction Attorney Raddatz had informed the Plaintiff that as an " Officer of the court" he gives 24 hour notice and he had also written to say the plaintiff will not be evicted but the defendants were willing to offer a financial settlement. While the negotiations were ongoing, the plaintiff

63. On April 30, 2014 an order granting motion to release funds from the court registry was entered on the docket.

64. On 7/28/2014 Order to disburse protective order fund entered on the docket.

65. On July 28, 2014 the court order was given to disburse protective order funds.

66. Defendants breached their contracts for both units/apt 611 and 409 with Plaintiff as described above, which has cause consequential damages to Plaintiff in the amount of at least $250,000.

Debbie (Debra) Lehan, (Keener Management) also working as managing agent for the Chastleton Cooperative Board), informed the plaintiff that the maintenance staff had entered the apartment, despite not having an appointment for that day. More importantly, no maintenance was done. As suspected, this was an illegal entry. The police intervened to investigate. In retaliation, one of the defendants, Ms. Lehan, despite not having any authority to discuss subleasing, accused the plaintiff of illegally subleasing to distract the key issue – the theft. Subsequently, police involvement led to a deteriorating relationship between the senior property managers, the junior property manager, Paul Hallam, the former Operations manager Mike Sica. The Chastleton cooperative board failed to investigate this matter in full, and the sublet committee never fined the plaintiff for illegal subleasing, despite Ms. Lehan's accusations. In fact, the plaintiff has never been fined for illegal subleasing from the time of the purchase in 2006 and 2007. If even the plaintiff illegally subleased, the Chasleton has not recorded their by-laws in the recorder of deeds office (Exhibit 21) in Washington D.C. and nullifies any claims of illegal subleasing. See discussion below regarding recordation and supporting case law.

68.    With the help of the joint attorney for the Chastleton cooperative association and Keener management, Attorney Mark Raddatz, who also acted as a debt collector, the defendants interfered with the plaintiff's contractual agreement in retaliation and due to discriminatory practices.

69.    On June 16, 2011, Ms. Lehan informed the plaintiff she could benefit from having two roommates, but never allowed her to comply due to imposition of rigorous conditions post purchase of the shares. (Exhibit 22). Prior to June 2011, the staff of keener was fully aware where the Plaintiff's roommates/subtenants lived (apt 611) In fact George Travis in his email refers to the 2 occupants as sub tenants. (Exhibit 22a)

14

67.    **Count II -- federal Fair Housing Act (FHA) (42 USC § 3601 et seq.).Fair Housing**

**Act. Title VIII of the Civil Rights Act of 1968, as amended** prohibits discrimination in

housing on the basis of race, color, religion, sex, national origin, familial status, and disability.[3]

One type of disability discrimination prohibited by the Act is the refusal to make reasonable

accommodations in rules, policies, practices, or services when such accommodations may be

necessary to afford a person with a disability the equal opportunity to use and enjoy a dwelling.[4]

In November 2008, the plaintiff was injured in a car accident and related criminal assault. The

plaintiff sustained serious injuries. At all times, the plaintiff kept the defendants[5] informed of her

medical conditions.     At all times, the plaintiff maintained cordial relationships with the

defendants. However, the relationship between Ms. Debbie Lehan, the senior property manager,

the former Keener property manager, staff and plaintiff had deteriorated since a theft that

occurred in 2010.   When the plaintiff made a complaint, the senior property manager, Ms.

---

[3] 2 The Act uses the term "handicap" instead of the term "disability." Both terms have the same legal meaning. See Bragdon v. Abbott, 524 U.S. 624, 631 (1998) (noting that definition of "disability" in the Americans with Disabilities Act is drawn almost verbatim "from the definition of 'handicap' contained in the Fair Housing Amendments Act of 1988"). This document uses the term "disability," which is more generally accepted.

[4] 3 42 U.S.C. § 3604(f)(3)(B).

[5] However Attorney Mark Raddatz, defendant was kept informed of the medical conditions only beginning June 2011 as he had only recently appointed the Attorney and also working as a debt collector for the Chastleton Cooperative Association. However, he was already working for Keener Management prior to June 2011.

clearly a violation as the member has to live with the family no matter what in order not to be considered subleasing, but Ms.Lehan testified that Ms.Durana uses the apt only as a pied a terre and lives out of the country and she is not aware as to when Ms.Durana lives in the Chastleton and how often and when she comes. However the plaintiff testified that she is a witness to others apart from family members living in one of Ms.Durana's apartment and to check with the security.

74.   On another matter, Lisa Manning actually violated the coop board requirements and were penalized but no liens were put in both apartments and membership terminated. However, the plaintiff who never violated was illegally fined and liens put on both apartment and invited to terminated membership but then put onerous conditions and provided unconscionable settlement agreement eventually forcing the defendant into insolvency. This is already discussed and testified. Ms. Lehan testified that Ms. Lisa Manning's father was a judge and he came to discuss matter and intimidated Ms. Lehan. Ms Lehan testified that the fees and fines were finally dropped. However, after holding the plaintiff in captivity" for not paying "alleged fees and fines" resulting in the denial of roommates and sub tenants, finally the truth came out and evidence of outright bias and discrimination.

75.   Most importantly, only in 2014 at the trail did the defendants finally admit that the fees and fines related to Ms. Andrea Velasquez have been removed. However, this was one of the key conditions denial of roommate and sub tenant income since Ms. Velasquez was approved as a three month guest despite outright rejection of her roommate application. This alleged fees and

70.     Over the period of June 2011 until the trial in January 2014, the plaintiff has been prevented from quiet use and enjoyment of the apartments, the ability to benefit from financial accommodation income from two roommates, subtenants, occupants, and reasonable accommodation in terms of having a bed in at 409 since June 2011. (See Attorney Beasley exhibit 23) (See Douglas Sparks Letter Exhibit 24), Plaintiff email sent to Attorney Raddatz Sept 26, 2012) Exhibit 26 Attorney Gary Brown Exhibit 27 and response from Attorney Raddatz exhibit 27a.

71.     Retaliation is also evident as the Plaintiff filed a fair housing complaint with both HUD and DCOHR. Since then, the defendants forcefully and deliberately violated the fair debt collection act and other laws to force the plaintiff out the Chastleton. Overall, the defendants outright rejected the fair housing complaints posed by both the plaintiff and her former Attorneys when the executed the writ of restitution in May 2014.

**72.     Selective enforcement/Discrimination– Fair housing.**  Selective enforcement is evident as the Caucasians who were or are multiple unit holders are not harassed or imposed rigid terms and conditions.  Both Ms Durana and Lisa Manning is known or appears to violate rules in different ways or allowed to violate rules. Perhaps a blind eye is been cast by the property managers and the coop board.

**73.**     The subleasing law is very clear and outlined in the occupancy agreement article 1V section 4.1 sub section A and delineated in the house rules. Ms Durana (owner of apartments 244 and 442 are allowed to live in Europe, and sublease apts. While immediate family members of the shareholder are permitted to reside in the unit and the owner has to live with them. This is

15

fines were used as a pretext to deny the plaintiff of quiet use and enjoyment of the apartments and to benefit from fair housing laws and not fall prey to illegal fair debt collection practices.

76.     Given that the bylaws are not recorded in the recorder of deeds office in Washington D.C. none of the above accusations of illegal subleasing or any house rule violations are valid and nullifies all claims put forth by the defendants.

77.     The plaintiff has successfully been able to reopen the case related to her injuries in the civil court and seeking to claim lost wages that was not afforded during the jury trial due to error made by the judge.

**Count 111: Harassment and Defamation Based on the above statements and statements below.**

78.     **Violation of jurisdictional law**-Key jurisdictional law are not followed and undisputedly justifies the need to dismiss the cases outright. Most important, the Defendants failed to produce a certificate of authority at the trial. Most important, in light of been a foreign corporation, in this case the Chastleton's failure to produce certificate of authority required by the District of Columbia statute in order for foreign corporation to bring action in District of Columbia Court,' and corporation's failure to even argue that it was permitted under the statute to bring lawsuit in District of Columbia as a foreign corporation, the Chastleton's claims would have to be dismissed even if court had subject matter jurisdiction over them. DC code 1981 29-399.20 (a) ILC Corp v Latino Newspaper, Inc 747 F. Suppl 85 1990 U.S. dist. LEXIS 13362 (1990)

79.     **Even if a certificate of Authority was granted by the corporation Division, the Certificate is inappropriately granted as the organization was not completed according to the terms of the Delaware statute by filing its By-Laws at the DC Recorder of Deeds Office.**

Watergate South, Inc. v. Duty, 464 A.2d 141 (D.C. 1983). Watergate South, Inc. v. Duty, 464 A.2d 141 (D.C. 1983)

80.   **Violations of Delaware State laws pertaining to foreign cooperatives and recordation of bylaws**.  The Chastleton cooperative association is a cooperative registered in Delaware, the Delaware laws applies on the validity of the by-laws. Title 81-SEC, 103 (38) requires Delaware cooperative Associations to record by-laws in the county where the property is located with the recorder of deeds office.

81.   The plaintiff asserts that she has searched the District of Columbia Recorder of Deeds office public filings.  Defendant asserts that the By-Laws of the Cooperative are not on file or recorded with the District of Columbia Recorder of Deeds.  Defendant argues, therefore, that the By-Laws are not in effect.  As the Chastleton By-laws are not recorded with the recorder of deeds office in Washington DC and nullifies all by laws including house rules and any claims of illegal subleasing.  The Chastleton Cooperative Association have not followed the Delaware Rules of incorporation as the cooperative association's by laws are not recorded in the recorder of deeds office and therefore not  doing business in the DC legitimately. Under Delaware law, the use of word "county" is irrelevant.  Washington D.C. operates as a county, state and municipality.  More importantly, the intent of the statute is by-laws be recorded with the local recorder of deeds and that people are given notification of the cooperative association's by laws. In these two cases, the cooperative has not registered the by-laws. Thus the by-laws are not valid and no provision of the by-laws may be used against the plaintiff in any way. Snowden v Benning Heights CO-OP., INC., 557 A.2d 151 (D.C. 1989).

82.   **Violations of Washington D.C. Housing Code and Laws related to the Termination of Cooperative Membership**.  The defendant tried to terminate the membership of the plaintiff three times. First time she was still solvent. More importantly, are three notices were given based on fraudulent information presented to the defendant and the court. This is contempt of court.  In accordance with a 1984 amendment, D.C. Code § 29-1141 (1988 Supp.), the termination of plaintiff's membership without a vote of the membership was unlawful because the cooperative association did not follow the procedures authorized by the laws of the state in which it is incorporated.  The plaintiff argues that the defendant – Chastleton Cooperative association have not complied with the organizational requirements of the Delaware code 81, and the actions alleged by defendant to have been taken by its Board of Directors are beyond the authority of its organic documents, as those documents have not been properly brought into effect. There is no validly existing or duly constituted Board according to the authority of DE Code section 81.

83.   The Plaintiff alleges that she was not served with a Notice of Payments (Three of them mentioned above) in accordance with the By-Laws of the Cooperative as the association's by-laws be recorded at the recorder of deeds office. See, DE Code section 81-103(38).  DC code – All filings for District of Columbia should be recorded in the recorder of deeds office in Wash D.C.

84.   The plaintiff alleges that not all of the addition fines and fees shown on the ledger attached to Defendants financial Statement are solely and directly attributable to her alleged non-payment of cooperative fees.

85.   **Senior Property Manager Ms. Debbie Lehan was not licensed and illegally working as a Property Manager until late 2012.** Since the time of the conversion, from 2006 until July

19

2012, Ms. Debbie Lehan, Senior property manager was illegally employed by Keener Management and also illegally working as a managing agent for the Chastleton Cooperative Association. Ms.Lehan had no authority to discuss roommates, sublets, correspond on behalf of Keener Management or the Chastleton Cooperative, and most importantly issue notice several notices of default and cure and termination as she has no license to practice as a Managing Agent and a Senior Property Manager for the Keener Management at least until July 2012. Ms. Lehan did not produce a copy of the license during the request for interrogatories or production of documents for both apartments. Ms.Lehan also admitted to DCOHR in May 2012 that she doesn't have a license, but have some certification which is not enough to meet the DC or Delaware code requirements. Subsequently Ms.Lehan a photocopy to show that she had a license only since 07/30/2012. (See exhibit 28). She was not qualified to work, nor represent the Chastleton as an agent nor harass and defame the plaintiff or have anything to do with subtenants or roommate applications and decisions.

86.    Defendants failed and refused and violated the FDCPA DCDCPA and the Federal and Fair housing acts and committed other torts.

87.    Plaintiff seeks Jury Trial

88.    THEREFORE Plaintiff prays that it order Defendants to cause the reinstate her Chastleton membership, awards damages to Plaintiff in the amount of $ 2 Million, attorneys' fees, treble damages, punitive and compensatory damages and to enjoin the defendants from undertaking similar actions in the future.

Respectfully submitted

Ms. Chaitri Hapugalle, Pro Se

20

3014 Dent Place, apt 24e
Washington D.C. 20007.
Tele: 202 286-9085

**Exhibits**

Exhibit 1: Section nine of the certificate of incorporation.

Exhibit 2: Apt 611 - First notice of Default/Cure/Intent to Revoke Proprietary Documents Nov 18, 2011

Exhibit 2a: Attorney Raddatz Invoice – Legal fees incurred from 06/02/2011-09/26/11

Exhibit 3: Settlement letter given by Attorney Raddatz on behalf of the Coop board on January 2012 which spells out fair debt collection and fair housing violations.

Exhibit 4: Apt 611-Second notice of Default/Cure/Intent to Revoke Proprietary Documents June 26, 2012

Exhibit 4a: Financial supporting exhibit 4.

Exhibit 5 Ms.Lehan informing the Plaintiff that the board has terminated the proprietary documents for apts 409 and apt 611.

Exhibit 5a: Terminating proprietary documents for apt 611 and threat of law suit signed by Wendy Schumacher 07/18/12 including financials.

Exhibit 6. An Email from Attorney Raddaz informing the plaintiff that Bank of America has asked for a payoff of fees and charges associated with the account and the board was willing to rescind the termination. July 27, 2012.

Exhibit 7: Letter sent by Blank Rome acting on behalf of Bank of America to Attorney Raddatz stating a check is enclosed for $11, 098.92 to satisfies the delinquency and prevent the termination of the proprietary lease for the unit owner  The letter also seeks confirmation that the cooperative will not terminate membership.

Exhibit 8:

Exhibit 9a-Plaintiff informs Blank Rome she has been notified that her membership will be revoked again (Third time) for non-payment and she is waiting for confirmation from Blank Rome that they give the plaintiff's membership back.

22

Exhibit 9b-Notice of payment default under occupancy agreement, opportunity to correct or cure and Intent to Revoke Proprietary Documents October 9, 2012. ·

Exhibit 9c: Blank Rome makes arrangements to have the fund to cure default and secure their interests.  October 16, 2012

Exhibit 10: Forth notice of Default/Cure/Intent First notice of Default/Cure/Intent to Revoke Proprietary Documents Nov 18, 2011

Exhibit 10a: Fourth notice of Default/Cure/Intent to Revoke Proprietary Documents Nov 18, 2011

Exhibit 10 b Chastleton cooperation association resolution to terminating proprietary documents for Apt 611.

Exhibit 11: Fourth Notice of termination of Cooperative membership and notice to quit and vacate.

Exhibit 12: Complaint/case filed with the land lord tenant court for possession of Apt 611 filed on April 17, 2013.

Exhibit 12b: Summons to appear in court on May 8, 2013.

Exhibit 13a: April 19 letter and check sent by Blank Rome acting on behalf of Bank of America for $10, 841.40

Exhibit 13 b – Check for $ 10, 841.40 from Blank Rome.

Exhibit 14: Apt 409 first notice of Default/Cure/Intent to Revoke Proprietary Documents Nov 18, 2011e

page

Exhibit 15: Apt 409: Second notice of Default/Cure/Intent to Revoke Proprietary Documents June 26, 2012

Exhibit 16: Apt 409: Second notice Chastleton cooperation association resolution to terminating proprietary documents for Apt 611.

Exhibit 17: Apt 409 Second notice of termination of Cooperative membership and notice to quit and vacate.

Exhibit 17a: NCB informs via email that the Defendants have not informed of any liens placed on the unit nor that they have cancelled the membership.

Exhibit 18: Affidavit from Ms.Lehan containing false information and financials.

Exhibit 19: Financials attached to the affidavit (Exhibit 18)

Exhibit 20 Plaintiff's opposition to summary judgment. Filed June 04, 2013. Pl note Plaintiff was a defendant in the land lord case 2012 LTB 24570

Exhibit 20 a: Judge Natalia Combs denying the Defendants motion for summary judgment on June 10, 2013.

Exhibit 21 Records from Recorder of Deeds Office to show that the Defendants have not registered the by-laws for the Chastleton signed by the recorder of deeds.

Exhibit 22 Email sent by Ms. Lehan on June 16, 2011 that the coop board had agreed for the plaintiff to have two roommates on the condition that it is used as a primary residence and unit 409 can only be used exclusively as an office and neither roommates nor guests will be permitted.

Exhibit 22 a – Email sent by George Travis regarding the Plaintiff's subtenants living in apt 611. April 24, 2009.

Exhibit 23: ˙Email sent by Attorney Raddatz to Attorney Beasley – plaintiff former lawyer regarding the knowledge of disability, violations and fees, sublets, roommates.

Exhibit 24 Letter from Douglas Sparks – Regarding reasonable accommodation and financial accommodation – roommate/subleasing income/disability.

Exhibit 26 – Email sent by Plaintiff regarding subleasing, mortgage issues and options.

Exhibit 27: Email sent by Attorney Gary Brown on behalf of the Plaintiff – reasonable accommodation – date October 8, 2013.

Exhibit 27 A: Response to Attorney Brown sent by Attorney Raddatz. October 15, 2013

Exhibit 28:  Proof to show that Ms. Lehan was illegally working as a property manager as she was not licensed to work until 07/30/2012.

## Certificate of Service

On August 30, 2014 after I file the complaint with the D.C. Superior Court, I will post copies of
the complaint, the information sheet and copies of the summons to the following defendant's
certified first class service.

ATTORNEY MARK RADDATZ
Raddatz Law Firm PLLC
1212 New York Avenue, Suite 850
Washington D.C. 20005

MS. DEBRA (DEBBIE) LEHAN
Senior Property Manager,
Chastleton Cooperative Association
and Keener Management
1701 16th Street N.W.
Washington D.C. 20009

CHASTLETON COOPERATIVE
ASSOCIATION INC.
1701 16th Street N.W,
Washington D.C. 20009

KEENER MANAGEMENT
1746 N St NW,
Washington, DC 20036

*Anita Hapugalle* (signature)
CHAITRI HAPUGALLE
3614 Dent place #24E
WASH DC 20007 .

26

Division of Corporations
FILE ... :58 AM 01/03/2006
SRV 060000730 - 4987579 FILE

CERTIFICATE OF INCORPORATION

OF

CHASTLETON COOPERATIVE ASSOCIATION, INC.

(A STOCK CORPORATION)

The undersigned natural persons (of the age of 21 years or over), acting as an incorporator of a corporation under the laws of the State of Delaware, adopt the following Certificate of Incorporation.

FIRST:     The name of the Corporation is CHASTLETON COOPERATIVE ASSOCIATION, INC.

SECOND:     The purposes of the Corporation is   (a) to create a cooperative association under Delaware law to construct or to acquire the housing project located at 1701 16th Street, N.W., Washington, D.C. ("Premises");, and to operate the same; (b) to enable or assume the financing of such cooperative housing with the assistance of mortgage insurance under the National Housing Act; (c) to enter into, perform, and carry out contracts of any kind necessary to, or in connection with, or incidental to, the accomplishment of the purposes of the corporation, including, expressly, any contract or contracts with the Secretary of Housing and Urban Development which may be desirable or necessary to comply with the requirements of the National Housing Act, as amended, and the Regulations of the Secretary thereunder, relating to the regulation or restriction of mortgagors as to rents, sales, charges, capital structure, rate of return and methods of operations; (d) to any acquire and property, real or personal, in fee or under lease, or any rights therein or appurtenant thereto, necessary for the construction and operation of such project, and (e) to borrow money, and to issue evidence of indebtedness, and to secure the same by mortgage, deed of trust, pledge, or other lien, in furtherance of any or all of the objects of its business in connection with said project.

THIRD:     In connection with the purposes set forth in Article SECOND above, the Corporation shall have the power to do and perform all things whatsoever set out in Article SECOND above necessary or incidental to the accomplishments of said purposes, including, but not limited to the power:

   (a)  To execute a Regulatory Agreement with the Secretary of the United States of Department of Housing and Urban Development ("HUD"), acting by and through the Federal Housing Commissioner, and such other instrument and undertakings as may be necessary to enable the Corporation to secure the benefits of financing with insurance provided under the National Housing Act, which Regulatory Agreement and such other instruments and undertakings as may be entered into by the Corporation its successors and assigns, so long as a deed of trust on the real property of the Corporation is insured or held by the Secretary of HUD.

1

(b)   To renovate and improve the Premises;

(c)   To own, operate, and manage the Premises for the benefit of its members and non-member tenants of the Premises, and not for profit;

(d)   To enter into agreements with its members which entitle the members to occupy specified dwelling units on the Premises or to lease such dwelling units, as provided in the Bylaws;

(e)   To borrow money and issue evidence of indebtedness, and to secure the same by mortgage, pledge or other lien, in furtherance of its business;

(f)   To enter into any kind of activity or relationship, and to perform contracts of any kind, necessary or incidental to the overall purposes of the Corporation;

(g)   To enter into a regulatory contract, recognition agreement or other similar agreement with any public or private lender or public or private mortgage guarantor or any governmental agency, for the purpose of securing loans, mortgage insurance or other financial assistance for itself and/or its members;

(h)   To do all things within its powers under the laws of the District of Columbia or incidental to accomplishing its purposes.

FOURTH:   The existence of the Corporation is perpetual.

FIFTH:   The address of the initial registered office of the Corporation in the State of Delaware is to be located at Corporation Trust Center, 1209 Orange Street, Wilmington (County of New Castle), Delaware 19801. The registered agent in charge thereof is The Corporation Trust Company.

SIXTH:   The name and address of the incorporator is Lane Potkin, at 4725 Wisconsin Ave., N.W., Washington, D.C. 20016

SEVENTH:   The number of initial Directors is five (5). This number may be changed pursuant to the Bylaws, but in any event may be no less than five (5) nor more than nine (9). The names and addresses of the initial Directors, who shall serve until their successors are elected and qualified, are:

Gary Squire               1746 N Street, N.W., Washington, D.C. 20036

Claude Keener             1746 N Street, N.W., Washington, D.C. 20036

Michael Korns             1746 N Street, N.W., Washington, D.C. 20036

2

Thomas Barringer     1746 N Street, N.W., Washington, D.C. 20036

Petra Robinson     1746 N Street, N.W., Washington, D.C. 20036

EIGHTH:    The Corporation is organized with shares and shall have members; each membership shall be associated with one dwelling unit at the Premises. The five initial Directors shall also be the five initial members, which have been subscribed for, and shall adopt Bylaws which shall provide for establishment of additional members. The amount of authorized shares is Ten Thousand, with a par value of $0.10.

NINTH:    All shares are of one class and each member is entitled to one vote per share. Shares have $0.10 par value. The minimum number or value of shares to qualify for membership is one. All memberships shall be represented by a single share certificate. There is no restriction on the amount of capital owned by one member, and members may own more than one share.

TENTH:    The By-laws of the Corporation may be amended or adapted by the shareholders or directors of the Corporation in accordance with the procedures therefore contained in the By-laws, provided that so long as a deed of trust on the real property of the Corporation is insured or held by the Secretary of HUD, any By-laws amended or adopted by the shareholders or directors of the Corporation shall not be inconsistent with the provisions of this Certificate of Incorporation or with the terms of any Regulatory Agreement then in effect between the Corporation and the Secretary of HUD.

So long as a deed of trust on the Corporation's real property is insured by the Secretary of HUD, this Certificate of Incorporation may not be amended without the prior written approval of such amendment by the Secretary of HUD.

TENTH:    Provisions for regulation of the internal affairs of the Corporation, including provisions for distribution of assets upon dissolution of the Corporation, are as provided in the Bylaws.

I, the undersigned, for the purposes of forming a corporation under the laws of the State of Delaware, do make, file and record this Certificate, and do hereby certify that the facts stated herein are true, and I have accordingly hereunto set my hand this 2nd day of January, 2006.

LANE A. POTKIN, Incorporator

3

805 FIFTEENTH STREET, NW
SUITE 201
WASHINGTON, DC 20005

(202) 466-8001
(202) 332-6700 fax
www.creditors-law.com

Ms. Chaitri Hapugalle[1]
1701 16th Street, NW Unit 611
Washington, DC 20009

November 18, 2011

VIA FIRST CLASS AND
REGISTERED MAIL.

## NOTICE OF DEFAULT UNDER OCCUPANCY AGREEMENT,
## OPPORTUNITY TO CORRECT/CURE
## INTENT TO REVOKE PROPRIETARY DOCUMENTS[2]

Please take notice that you are in default in paying monthly/special assessments for the cooperative real property located at 1701 16th Street, NW Unit 611, Washington, DC 20009 ("Premises") pursuant to your Occupancy Agreement, dated August 11, 2006. The "Corporation", Chastleton Cooperative Association, Inc., hereby provides you with notice that the event(s) of default are detailed as follows:

**Default(s): (Copies of All Notices Attached)**

| | | |
|---|---|---|
| 1. | Non-payment of Special Charges Notice October 4, 2011 (Attorney's Fees) | $6,048.00[3] |
| 2. | Non-payment of November, 2011 Cooperative and Late Fees | $1,607.21 |

**To Correct/Cure:**

1.     Pay the sum of **$7,655.21** (detailed above), **plus** December 2011 Cooperative Fees of **$1,530.68**, and attorney's fees for this notice, in the sum of **$275.00** to the Corporation by **December 5, 2011 at 5:00 p.m.** If said payment is made after November 30, 2011, it must be in certified funds or bank check.

Should said default(s) not be corrected/cured by **December 5, 2011 at 5:00 p.m.**, the Corporation's Board of Directors ("Board") may terminate your Occupancy Agreement and Stock Certificate at its next meeting, listed below. Should you wish to be heard by the Board on this matter, you may do so on **December 5, 2011 at 7:30 p.m.** in the ballroom facility at 1701 16th Street, NW Washington, DC 20009 (next meeting date). Should your Occupancy Agreement and Stock Certificate be terminated aforesaid, notice is hereby given that you shall thereupon quit and surrender the Premises to the Corporation. Should you fail to do so, the Corporation will proceed with appropriate measures to regain possession of the Property.

Mark R. Raddatz, Esq.
Raddatz Law Firm, PLLC
Attorney for Corporation
805 15th Street, NW, Suite 201
Washington, DC 20005
(202) 466-8001

---

[1] With copies to Bank of America 900 W. Trade Street Charlotte, NC 28255, Andrew M. Sowell, Esq. 419 7th Street, NW Suite 401, Washington, DC 20004.
[2] "Proprietary Documents" defined as the Occupancy Agreement and Stock Certificate.
[3] Payment of this charge for Unit 409 will serve to novate any payment due for this charge for unit 611.

**Chastleton Cooperative, Inc.**
1701 16th Street, NW
Washington, DC 20009

## Invoice # 1000

**Invoice Date:**    10/4/2011

**Bill To:**    Apt. 409/611-Hapugalle

**Amount Due:**    $6,048.80

---

**Description:**    Bill back for legal fees incurred 6/2/11—9/26/11 through Raddatz Law Firm, PLLC. Per The Chastleton Cooperative Association Occupancy Agreement, Article II, Section 2.3:

IF MEMBER DEFAULTS IN MAKING A PAYMENT OF MONTHLY OR SPECIAL CHARGES OR IN THE PERFORMANCE (OR IS OTHERWISE IN VIOLATION OF) OF ANY PROVISION OF THE COOPERATIVE DOCUMENTS AND THE COOPERATIVE RETAINS THE SERVICES OF ANY ATTORNEY OR COLLECTION AGENCY DUE TO THE MEMBER'S DEFAULT, THE MEMBER WILL PAY TO THE COOPERATIVE ANY AND ALL COSTS OR FEES, INCLUDING REASONABLE ATTORNEY'S FEES AND COURT COSTS INCURRED BY THE COOPERATIVE. ALL SUCH COSTS AND FEES WILL BE SPECIAL CHARGES PAYABLE TO THE COOPERATIVE UPON DEMAND.

| Date | Action/Notes | Amount |
|------|--------------|--------|
| 10/4/11 | | $6,048.80 |
| | Total: | $6,048.80 |

Please remit payment within 30 business days. Checks should be made payable to the Chastleton Cooperative Association. Thank you.

805 Fifteenth Street, NW
Suite 201
Washington, DC 20005

(202) 466-8001
(202) 332-6700 fax
www.creditors-law.com

Tax ID: 52-2316513
Invoice Date: July 28, 2011
Invoice Number: 10403.1-0711

Chastleton Coop. Assn., Inc.
C/O Management Office
1701 16th Street, NW
Washington, DC 20009

Re: Units 409/611 Chaitri Hapugalle

## INVOICE

## FOR PROFESSIONAL SERVICES RENDERED:

| Date: | Matter: | Atty. | Description: | Total: |
|---|---|---|---|---|
| **HOURLY SERVICES:** | | | | |
| 06.02.11 | 409/611 | MRR | Initial meeting with Association, discuss matter, history and concerns. | 0.5 |
| 06.03.11 | 409/611 | MRR | File document review, pull court records, court review. | 0.8 |
| 06.06.11 | 409/611 | MRR | Email reviews and exchanges with owner and Ms. Lehan regarding setting meeting with owner. | 0.2 |
| 06.07.11 | 409/611 | MRR | Receive and review documents from Client/Flynn. | 0.4 |
| 06.10.11 | 409/611 | MRR | Telephone correspondences with Ms. Lehan, e-mail reviews, draft letter of representation to owner. | 0.5 |
| 06.11.11 | 409/611 | MRR | Correspondences via e-mail and telephone with Keener Management regarding owner's claims. | 0.5 |
| 06.13.11 | 409/611 | MRR | Conference call with ██████████████ and Ms. Lehan regarding owner's claims,  receive and review extended e-mail from owner.  Attend Board Executive Session and set forth position/plan. | 2.9 |
| 06.16.11 | 409/611 | MRR | Review proposed response and concur with Ms. Lehan (████████████), verification of no agreement between owner and ████████. | 0.3 |

CHASTLETON COOP. ASSN., INC.
JULY 28, 2011
PAGE 2 OF 3

| Date: | Matter: | Atty. | Description: | Total: |
|-------|---------|-------|--------------|--------|
| 06.17.11 | 409/611 | MRR | Review and mark-up proposed letter to owner from management. | 0.4 |
| 06.21.11 | 409/611 | MRR | Receive and review owner e-mail response to Ms. Lehan, telephone call with Ms. Lehan. | 0.3 |
| 06.24.11 | 409/611 | MRR | Office meeting at property with owner and proposed roommate - CCA, Inc.'s position thereon relayed to owner. | 2.1 |
| 06.25.11 | 409/611 | MRR | Review e-mail correspondence from owner. | N/C |
| 06.30.11 | 409/611 | MRR | Telephone call with Ms. Lehan regarding owner confrontation with management in office, advise to call police.  Draft and send e-mail to owner, review multiple e-mails to/from owner with respect to roommates, packages and repairs. | 1.4 |
| 07.06.11 | 409/611 | ELP | Telephone correspondence with Ms. Lehan regarding owner's ongoing accusations. | 0.2 |
| 07.07.11 | 409/611 | ELP | Follow-up correspondences with Ms. Lehan, draft e-mail to owner with respect to case status, need for her attorney to contact office. | 0.3 |
| 07.12.11 | 409/611 | ELP | E-mail review.  Conference call with Ms. Lehan and with Atty. Beasley regarding circumstances and need for an in-person meeting. | 0.4 |
| 07.14.11 | 409/611 | MRR | Status (meeting) follow-up to Atty. Beasley. | N/C |
| 07.19.11 | 409/611 | MRR | E-mail correspondences with Atty. Beasley regarding need for immediate action/meeting. | 0.2 |
| 07.22.11 | 409/611 | MRR | E-Mail and telephone correspondences with Atty. Beasley - meeting date set and confirmed over her immediate objections. | 0.3 |
| 07.25.11 | 409/611 | MRR | Meeting with owner, her attorney and Ms. Lehan, options discussed, 07.27.11 follow-up deadline set for Atty. Beasley.  Next-day service schedule for maintenance set with owner. | 2.0 |

805 Fifteenth Street, NW
Suite 201
Washington, DC 20005

(202) 466-8001
(202) 332-6700 fax
www.creditors-law.com

Tax ID:  52-2316513
Invoice Date:  October 7, 2011
Invoice Number:  10403.1-1011

CHASTLETON COOP. ASSN., INC.
C/O MANAGEMENT OFFICE - BORA
1701 16TH STREET, NW
WASHINGTON, DC 20009

RE:  UNITS 409/611 CHAITRI HAPUGALLE

## INVOICE

## FOR PROFESSIONAL SERVICES RENDERED:

| Date: | Matter: | Atty. | Description: | Total: |
|-------|---------|-------|--------------|--------|
| **HOURLY SERVICES:** | | | | |
| 10.06.11 | 409/611 | MRR | Office conference with Ms. Lehan, draft detailed response letter to Hapugalle regarding roommates and Board's position. | 1.9 |
| | | | (Total Hours 1.9 x $275/hr.) | $522.50 |
| **AMOUNT DUE:** | | | | $522.50 |

805 FIFTEENTH STREET, NW
SUITE 201     Case 1:14-cv-01696   Document 1-1   Filed 10/09/14   Page 69 of 85   (202) 466-8001
WASHINGTON, DC 20005                                                        (202) 332-6700 fax
                                                                    www.creditors-law.com

Tax ID:  52-2316513
Invoice Date:  November 18, 2011
Invoice Number:  10403.1-1111

CHASTLETON COOP. ASSN., INC.
C/O MANAGEMENT OFFICE - BORA
1701 16TH STREET, NW
WASHINGTON, DC 20009

RE:  UNITS 409/611 CHAITRI HAPUGALLE

## INVOICE

**FOR PROFESSIONAL SERVICES RENDERED:**

| Date: | Matter: | Atty. | Description: | Total: |
|-------|---------|-------|--------------|--------|
| **HOURLY SERVICES:** | | | | |
| 11.14.11 | 409/611 | MRR | Receive and review letter from occupant's new attorney - call attorney, discuss with Management. | 0.2 |
| 11.18.11 | 409/611 | MRR | Draft notice of intent to terminate for units 409 and 611, copies to counsel, occupant, NCB Bank and Bank of America in anticipation of 12.05.11 Board meeting. | 2.0 |

(Total Hours 2.2 x $275/hr.)                    **$605.00**

**AMOUNT DUE:**                                      **$605.00**

| Date: | Matter: | Atty. | Description: | Total: |
|-------|---------|-------|--------------|--------|
| 07.26.11 | 409/611 | MRR | Review e-mail correspondences with respect to owners post-meeting actions, including with other owners in person and via e-mail. | 0.2 |
| 07.27.11 | 409/611 | MRR | Telephone correspondence with Atty. Beasley regarding unacceptable actions of her client in the hours/days after meeting.  Draft Notice of Violation for Elevator/Move and Notice of Violation for Unauthorized Occupant. | 3.1 |

|  |  |
|--|--|
| ELP    (Total Hours 0.9 x $200/hr.) | $   180.00 |
| MRR    (Total Hours 16.1 x $275/hr.) | $4,427.50 |

**SUBTOTAL:**                                                                               $4,607.50

**COSTS:**

| | 409/611 | | Delivery Confirmation, USPS | $    11.30 |
|--|---------|--|-----------------------------|-----------|

**AMOUNT DUE:**                                                                          $4,618.80

# FINE SCHEDULE

| Violation | Response or 1st Violation | 2nd Response or Violation (within 12 month period of 1st violation) | Additional Responses or Violations (within 12 month period of last violation) |
|---|---|---|---|
| Vandalism/Damage to common areas-unreported | $500 minimum fine plus cost of damaged property and Board notification | $1,000 minimum fine plus cost of damaged property and Legal action | |
| Damage to common areas – reported | No fine, but cost of damage to property and Board notification | | |
| Smoking in common areas | $100 fine and Board notification | $250 fine per each additional violation | |
| Noise (carpeting rule violation) | Written warning from management establishing install deadline | $100 fine and Board notification | $100 fine per week until carpeting is installed |
| Noise (misc.) | Written warning from management | $100 fine and Board notification | $250 fine per each additional violation |
| Parking (front circle) | $25 fine | $50 fine and Board notification | $100 fine per each additional violation and Board notification |
| Parking (back lot) | $50 fine and Board notification | $100 fine and Board notification | $200 fine and Board notification |
| Pets | Written notice to remove pet within 24 hours, $100 fine and Board notification | $100 fine per week until unauthorized pet is removed | |
| Sublet | $2,000 fine and Board notification | $1,000 fine per month until unauthorized Sublet Tenant vacates | |
| Renovating (material renovations) without notice to Cooperative | Written notification, $250 fine and Board notification | $500 fine per week until Board approval has been granted | |
| Entering restricted areas | $250 fine and Board notification | $500 fine per each additional violation and Board notification | |
| Items left outside door | Written notification from management | $100 fine and Board notification | $200 fine per each additional violation |
| Unauthorized occupants | Written notification from management and Board notification | $500 fine per month until the occupant is registered and approved by Board | |
| Unscheduled moves | $500 fine per violation | | |
| Unruly or inappropriate behavior in common areas | Written notification from management | $150 fine and Board notification | $300 fine per each additional violation |

18

NOW COME The Chasueton Cooperative Assn., Inc., (the "Cooperative") and Chaitri Hapugalle ("Hapugalle") Shareholder in Units 409 and 611 at the Cooperative, to set forth their mutual agreements, as follows:

1.  The Cooperative has served Hapugalle with two (2) <u>Notices of Violation of Cooperative Documents and Intent to Assess Penalty</u> on July 31, 2011.

2.  The Cooperative has served Hapugalle with a <u>Notice of Default Under Occupancy Agreement, Opportunity to Correct/Cure Intent to Revoke Proprietary Documents</u> on November 18, 2011, setting forth Penalties in the sum of $1,825.00, and accrued attorney's fees in the sum of $6,048.00.

3.  That in consideration of the following, the aforementioned Notices are hereby withdrawn, subject, but not limited to, the provisions herein and set forth in Paragraph 4 below. Hapugalle, hereby agrees to the following terms "Terms," as follows:

    a.  Hapugalle, now and in perpetuity, will utilize Unit 409 solely as an office, with no bed, bedding, clothing, or sleeping apparel being left therein. Hapugalle shall in no event sleep in Unit 409. No guests, short or long term, may occupy said unit for any period of time;

    b.  Hapugalle will utilize Unit 611 as her residence and sleeping quarters. Hapugalle will be permitted one (1) roommate at a time, with no overlap(s), no couples, and no automatic substitutions, subject to the additional terms below:

        b (1)  Hapugalle or her roommate shall pay the customary $400.00 move-in and move-out fees for any roommate, should any furniture be moved into or out of the Unit,

l

and shall comply with all extant rules and regulations of the Cooperative n
to moving then in effect.

b (2)   Hapugalle or her roommate shall pay the customary application, backgroun
credit check fee, and obtain Cooperative approval of any roommate, prior t
roommate moving into the Unit.

b (3)   Paragraphs b(1) and b(2) immediately above shall apply to each roommate
in, move-out, or application.

c.   Hapugalle may change the locks on Units 409 or 611, or both, at her own expense,
does so recognizing that the Cooperative will provide no "lock-out" service to Hap
and in the event of fire, or in the event of another emergency which threatens the li
the condition of the building itself, including but not limited to adjoining units, inc
above, below and to each side, and the Cooperative cannot gain immediate access
through Hapugalle, that the respective unit door will be broken to allow for emerge
access, and Hapugalle shall pay all expenses arising there from, including the cost:
repairs, and the time expended by Cooperative employees.

d.   Hapugalle agrees that representatives of the Cooperative or Management shall hav
right to inspect either unit upon reasonable notice (not less than 24 hours) to Hapu
and that Hapugalle shall cooperate fully with such requests, as well as be there at
of inspection - personally.

e.   Hapugalle understands and agrees that no maintenance to Unit 409 or 611 will be
completed without Hapugalle being present.

2

f.     Hapugalle and the Cooperative agree to settle all outstanding fines and assessments, including the Special Assessment for Attorney's Fees accrued, for the sum of $6,000.00.

Said $6,000.00 shall be repaid to the Cooperative in monthly payments of $300.00 per month, commencing February 1, 2012 and by the first (1st) day of each respective month thereafter, until paid in full. Any payment not received by the fifth (5th) day of any respective month shall be deemed "late" and a default hereunder. Said payments shall be in addition to any and all other fees and assessments that shall accrue. Time is of the essence as to all payments. There is no right of redemption for missed or late payments, expressed, nor implied.

4.     Hapugalle's failure to strictly comply with any of the aforementioned Terms shall constitute a default hereunder, shall serve to reinstate the July 31, 2011 and November 18, 2011 Notices, and by mutual agreement hereunder, will subject Hapugalle to revocation and termination of her Occupancy Agreement(s) and Stock Certificate(s) for Unit 409, 611, or both, at the next Board Meeting, following default. The Cooperative shall give Hapugalle at least eleven (11) days' written notice of a declaration of default hereunder, and of the Board Meeting thereafter, in which revocation will be addressed.

Accepted and Agreed:

_____        _____
Chaitri Hapugalle                                               Date

_____        _____
Chastleton Cooperative Assn., Inc.                       Date

3

RADDATZ LAW FIRM, PLLC
1212 NEW YORK AVENUE, NW
SUITE 350
WASHINGTON, DC 20005

*Including Financia*

Case 1:14-cv-01696   Document 1-1   Filed 10/09/14   Page 75 of 85

(202) 466-8001
(202) 332-6700 fax
www.creditors-law.com

Ms. Chaitri Hapugalle
1701 16th Street, NW Unit 611
Washington, DC 20009

June 26, 2012
VIA FIRST CLASS ELECTRONIC AND
REGISTERED MAIL.

### NOTICE OF PAYMENT DEFAULT UNDER OCCUPANCY AGREEMENT, OPPORTUNITY TO CORRECT/CURE, INTENT TO REVOKE PROPRIETARY DOCUMENTS[2]

Please take notice that you are in default in paying monthly/special assessments for the cooperative real property located at 1701 16th Street, NW Unit 611, Washington, DC 20009 ("Premises") pursuant to your Occupancy Agreement, dated August 27, 2007. The "Corporation", Chastleton Cooperative Association, Inc., hereby provides you with notice that the event(s) of default are detailed as follows:

**Default(s):**

1.  Non-Payment of Cooperative Fees, Late Fees, and Maintenance Fees totaling **$7,341.49** (January 1, 2012 through June 30, 2012 - Itemization Attached) and Legal Fees of **$412.50**, for a total of **$7,753.99** through June 30, 2012.

**To Correct/Cure:**

1.  Pay the sum of **$7,753.99**, plus any accrued cooperative monthly fees and late fees to the Corporation by July 13, 2012.

Should said default(s) not be corrected/cured by July 13, 2012, the Corporation's Board of Directors ("Board") may terminate your Occupancy Agreement and Stock Certificate at its next meeting. Should you wish to be heard by the Board on this matter, you may do so on **Monday, July 16, 2012 at 7:30 p.m.** in the ballroom facility at 1701 16th Street, NW Washington, DC 20009 (next meeting date). Should your Occupancy Agreement and Stock Certificate be terminated aforesaid, notice is hereby given that you shall thereupon quit and surrender the Premises to the Corporation. Should you fail to do so, the Corporation will proceed with appropriate measures to regain possession of the Property.

*[signature]*

Mark R. Raddatz, Esq.
Raddatz Law Firm, PLLC
Attorney for Corporation
1212 New York Avenue, NW Ste. 350
Washington, DC 20005
(202) 466-8001

---

1 With copy to Bank of America, 200 South College Street, Charlotte, NC 28202; Bank of America, 900 West Trade Street, Charlotte, NC 28255.
2 "Proprietary Documents" defined as the Occupancy Agreement and Stock Certificate.

# Chastleton Cooperative Association (MMM)

| Customer/ Invoice Date | Invoice Number | Due Date | Discount | Discount Amount | Balance | Current | 30 Days | 60 Days | 90 Days | 120 Days | Days Delq |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 0000611 | CHAITRI +APPUJGALE | | Contact: | | | Phone: | | | | | |
| 1/24/2012 | 0029961-IN | 1/24/2012 | | 0.00 | 20.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20.00 | 133 |
| 2/1/2012 | 0029862-IN | 2/1/2012 | | 0.00 | 1,404.13 | 0.00 | 0.00 | 0.00 | 1,404.13 | 0.00 | 125 |
| 3/1/2012 | 0030984-IN | 3/1/2012 | | 0.00 | 1,404.13 | 0.00 | 0.00 | 1,404.13 | 0.00 | 0.00 | 96 |
| 3/15/2012 | 0030702-IN | 3/15/2012 | | 0.00 | 70.21 | 0.00 | 0.00 | 70.21 | 0.00 | 0.00 | 82 |
| 3/15/2012 | 0030704-IN | 3/15/2012 | | 0.00 | 70.21 | 0.00 | 0.00 | 70.21 | 0.00 | 0.00 | 82 |
| 4/20/2012 | 0039338-IN | 4/20/2012 | | 0.00 | 1,404.13 | 0.00 | 1,404.13 | 0.00 | 0.00 | 0.00 | 54 |
| 4/17/2012 | 0031144-IN | 4/17/2012 | | 0.00 | 70.21 | 0.00 | 70.21 | 0.00 | 0.00 | 0.00 | 54 |
| 4/16/2012 | 0031290-IN | 4/16/2012 | | 0.00 | 20.00 | 0.00 | 20.00 | 0.00 | 0.00 | 0.00 | 55 |
| 5/1/2012 | 0031442-IN | 5/1/2012 | | 0.00 | 1,404.13 | 1,404.13 | 0.00 | 0.00 | 0.00 | 0.00 | 35 |
| 5/15/2012 | 0031775-IN | 5/15/2012 | | 0.00 | 70.21 | 70.21 | 0.00 | 0.00 | 0.00 | 0.00 | 21 |
| 5/1/2012 | 0032005-IN | 5/1/2012 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4 |
| | **Customer 0000611 Totals:** | | | 0.00 | 7,341.49 | 1,474.34 | 1,494.34 | 1,544.55 | 1,404.13 | 1,424.13 | |
| | **Report Totals:** | | | 0.00 | 7,341.49 | 1,474.34 | 1,494.34 | 1,544.55 | 1,404.13 | 1,424.13 | |
| | **Number of Customers:** | 1 | | | | | | | | | |

... Terminating Proprietary Documents CH409 and CH611 - Yahoo! Mail    Page 1 of 2

Case 1:14-cv-01696    Document 1-1    Filed 10/09/14    Page 77 of 85

# YAHOO! MAIL
### Classic

**DL Fw: Resolutions Terminating Proprietary Documents CH409 and CH611**

**From:** "chai hapugalle" <chai_hapugalle@yahoo.com>          Tuesday, September 4, 2012 5:18 AM
**To:** Chai_hapugalle@yahoo.com
2 Files (124KB)

  

611 Reso...    409 Reso...

— On Thu, 7/19/12, Debbie Lehan <DLehan@keenermanagement.com> wrote:

From: Debbie Lehan <DLehan@keenermanagement.com>
Subject: Resolutions Terminating Proprietary Documents CH409 and CH611
To: "chai hapugalle (chai_hapugalle@yahoo.com)" <chai_hapugalle@yahoo.com>
Cc: "Ari Fredge" <AFredge@keenermanagement.com> "Bora Kang"
<BKang@keenermanagement.com>, "Raddatz (mraddatz@creditors-law.com)"
<mraddatz@creditors-law.com>, "rokatz@lerchearly.com" <rokatz@lerchearly.com>
Date: Thursday, July 19, 2012, 5:47 PM

Chai,

As required by the cooperative documents you were provided with proper advanced notice of the meeting in which the Board would vote on terminating your proprietary documents. The meeting was held this past Monday, July 16th and you were in attendance and given the opportunity to speak during the executive session. As you are aware your account is seriously past due and you were unable to present to the board an agreeable solution for payment.

After you left, the board discussed your situation and two motions were called before the board:

The 1st motion was called to "Terminate the proprietary documents of Chaitri Hapugalle for unit 409". The vote passed.

The 2nd motion was called to "Terminate the proprietary documents of Chaitri Hapgulle for unit 611". The vote passed.

Attached, you will find the resolutions terminating your proprietary documents for both units. Additionally, copies have been left for you at the front desk. These have been logged in as a delivery and you will be required to sign for them.

All questions regarding this matter should be addressed to either myself or Mr. Mark Raddatz.

Thanks,
Debbie

3 pages

# CHASTLETON COOPERATIVE ASSOCIATION, INC.
## RESOLUTION
### TERMINATING PROPRIETARY DOCUMENTS FOR APARTMENT 611

WHEREAS, the monthly cooperative assessments owed by Chaitri Hapugalle, who is the Member for Apartment 611 in the Chastleton Cooperative Association, Inc. (the "Cooperative"), are and have been seriously delinquent;

WHEREAS, in accordance with Article II, Section 6 of the Cooperative's Bylaws and Section 12.1 of the Occupancy Agreement for Apartment 611, notice of the delinquency and an opportunity to cure was given by letters dated June 26, 2012 to Chaitri Hapugalle and to Bank of America, 200 South College St, Charlotte, NC & Bank of America, 900 West Trade St, Charlotte, NC, which is the holder of the Recognition Agreement for Apartment 611;

WHEREAS, payment of the full arrearage has not been received by the Cooperative and the time for curing this delinquency as set forth in the above referenced notices has expired;

WHEREAS, by letter dated June 26, 2012 to Chaitri Hapugalle, the Board of Directors of the Cooperative scheduled a hearing for July 16, 2012 in which to consider termination of   Chaitri Hapugalle's Occupancy Agreement and Stock Certificate ("Proprietary Documents") for non-payment of Cooperative assessments.   At such hearing, Chaitri Hapugalle:

☒ appeared and was given an opportunity to be heard on her delinquency
or

☐ failed to appear

WHEREAS, the Board of Directors has the authority pursuant to Article II, Section 6 of the Bylaws to terminate a Member's Proprietary Documents and interest in the Cooperative for a default in the payment of Cooperative assessments if such default is not cured within ten (10) days after notice and after an opportunity to be heard at a hearing in front of the Cooperative's Board of Directors.

NOW THEREFORE, as a result of the continued delinquency in the payment of assessments for Apartment 611, the Board of Directors of the Chastleton Cooperative Association, Inc., hereby takes the following action:

a. Terminates the Proprietary Documents for Apartment 611 and all of the rights, title and interest of Chaitri Hapugalle in the Cooperative and Apartment 611 as a result of their continued non-payment of Cooperative assessments;

b. Directs Chaitri Hapugalle to vacate Apartment 611 and submit to the Board of Directors her Proprietary Documents within fifteen (15) days of receiving notice and a copy of this Resolution, and

c. In the event Chaitri Hapugalle fails to vacate Apartment 611 as indicated herein, the Cooperative's legal counsel is directed to file such lawsuit and take steps as may be necessary to regain possession of Apartment 611 on behalf of the Cooperative. All fees and costs for such action, shall be assessed to Chaitri Hapugalle.

This Resolution was duly adopted by a majority of the Chastleton Cooperative Association Inc's Board of Directors at a duly convened meeting on July 16, 2012.

Attested to by the Secretary of the Board of Directors:

Wendy Schumacher    7/18/12
Secretary                     Date

All Open Invoices - Aged as of 07/25/2012

Chincoteague Bay Cooperative Association (MMM)

| Customer/Invoice Date | Invoice Number | Invoice | Due Dates | Discount | Discount Amount | Balance | Current | 30 Days | 60 Days | 90 Days | 120 Days | Days Deliq |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 000811 | | | | SANITRY SUPPO/DALE | Contact: | | | Phone: | | | | |
| 1/24/2012 | 3029961-IN | 1/24/2012 | Maintenance invoice | | 0.00 | 20.00 | | | | | 20.00 | 183 |
| 2/1/2012 | 3029882-IN | 2/1/2012 | February Coop Fee | | 0.00 | 0.00 | | | | | 0.00 | 144 |
| 2/1/2012 | 3030354-IN | 2/1/2012 | March Coop Fee | | 0.00 | 1,404.13 | | | | | 1,404.13 | 175 |
| 2/15/2012 | 3030703-IN | 2/15/2012 | February Late Fee | | 0.00 | 0.00 | | | | | 0.00 | 148 |
| 3/5/2012 | 3030704-IN | 3/5/2012 | March Late Fee | | 0.00 | 70.21 | | | | | 70.21 | 132 |
| 4/2/2012 | 3030938-IN | 4/2/2012 | April Coop Fee | | 0.00 | 1,404.13 | | | | 1,404.13 | | 132 |
| 4/1/2012 | 3031171-IN | 4/1/2012 | April Late Fee | | 0.00 | 70.21 | | | | 70.21 | | 114 |
| 4/16/2012 | 3031130-IN | 4/16/2012 | Maintenance invoice | | 0.00 | 0.00 | | | | 0.00 | | 105 |
| 5/1/2012 | 3031442-IN | 5/1/2012 | Maintenance invoice | | 0.00 | 20.00 | | | | 20.00 | | 85 |
| 5/1/2012 | 3031775-IN | 5/1/2012 | May Coop Fee | | 0.00 | 0.00 | | | | 0.00 | | 100 |
| 5/1/2012 | 3032005-IN | 5/1/2012 | June Coop Fee | | 0.00 | 1,404.13 | | | 1,404.13 | | | 85 |
| 5/15/2012 | 3032238-IN | 5/15/2012 | May Late Fee | | 0.00 | 70.21 | | | 70.21 | | | 71 |
| 6/19/2012 | 3032219-IN | 6/19/2012 | June Coop Fee | | 0.00 | 55.00 | | | 0.00 | | | 54 |
| 6/19/2012 | 3032312-IN | 6/19/2012 | Maintenance invoice | | 0.00 | 0.00 | | | 0.00 | | | 40 |
| 7/2/2012 | 3032553-IN | 7/2/2012 | July Coop Fee | | 0.00 | 1,404.13 | | 1,404.13 | | | | 36 |
| 7/17/2012 | 3032554-IN | 7/17/2012 | July Late Fee | | 0.00 | 70.21 | | 70.21 | | | | 23 |
| 7/25/2012 | 3032855-IN | 7/25/2012 | Legal Fee for Termination Notice | | 0.00 | 412.50 | | 412.50 | | | | 1 |
| 7/25/2012 | 3032856-IN | 7/25/2012 | Legal Fees for Non-Payment | | 0.00 | 171.25 | | 171.25 | | | | 1 |
| | | | Customer 000811 Totals: | | 0.00 | 9,594.79 | 2,058.29 | 1,499.34 | 1,474.34 | 1,494.34 | 2,368.38 | |
| | | | Report Totals: | | 0.00 | 9,594.79 | 2,058.29 | 1,499.34 | 1,474.34 | 1,494.34 | 2,368.38 | |

Number of Customers: 1



Atty Raddatz. Also have a list of tenants we own but whose cases are still pending, plus to hear if / of the coop board would be approving roomates in the future and my use of the apartments.

Thank you
Chaitri Hapugalle



--- On Fri, 7/27/12, Mark Raddatz <mraddatz@creditors-law.com> wrote:

From: Mark Raddatz <mraddatz@creditors-law.com>
Subject: Fwd: Re: Chastleton Cooperative Association, Inc. vs Chaitri Hapugalle
To: "chai hapugalle" <chai_hapugalle@yahoo.com>
Cc: "Debbie Lehan" <DLehan@keenermanagement.com>
Date: Friday, July 27, 2012, 5:17 PM

Ms. Hapugalle:

Bank of America, your lender on unit 611, has asked for a payoff of fees and charges associated with your recent unit non-payment termination.

As the termination was based solely on non-payment of cooperative fees and late charges (plus legal fees directly associated to the non-payment termination only), the figure provided to them is less than your outstanding ledger balance.

The Board has agreed to rescind the termination of Unit 611 shares, should Bank of America pay off the non-payment-termination-associated fees and charges of $9,694.79 (through 8/31 2012).

Correspondences related to this transaction are detailed below. The non-payment-termination-associated fees and charges portion of the ledger is attached for your reference.

Best Regards,

Mark P. Raddatz
Raddatz Law Firm, PLLC
1212 New York
Avenue, NW
Suite 350
Washington, DC 20005
202-466-4321
202-332-6700 fax


THIS COMMUNICATION IS FROM A DEBT COLLECTOR


-------- Original Message --------
Subject: Re: Chastleton Cooperative Association, Inc. vs Chaitri Hapugalle
Date: Fri, 27 Jul 2012 11:59:28 -0400
From: Mark Raddatz <mraddatz@creditors-law.com>
To: Timberlake, Craig <CTimberlake@BlankRome.com>

You are correct.

Thanks.

Mark

Mark P. Raddatz
Raddatz Law Firm, PLLC
1212 New York Avenue, NW
Suite 350



BLANK ROME LLP
COUNSELORS AT LAW

Phone:   215-569-5697
Fax:     215-832-5697
Email:   ABliss@blankrome.com

August 9, 2012

**Via Certified Mail**

Mark R. Raddatz
Raddatz Law Firm, PLLC
1212 New York Avenue NW, Suite 850
Washington, DC 20005

 Re:   **Chastleston Cooperative Association, Inc. (the "Cooperative")**
       **Borrower/Unit Owner: Chaitri Hapugalle**
       **Address: 1701 16th Street NW, Unit 611, Washington, DC 20009**

Dear Mr. Raddatz:

 As you know, this office represents Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP, the servicer of the loan secured by the above-referenced property. Enclosed is our firm's Trust Account check in the amount of $11,098.92, which satisfies the outstanding delinquency and prevents the termination of the proprietary lease for the unit owner, Chaitri Hapugalle. This payment shall bring current the account with the Cooperative.

 Please confirm the receipt of these funds and the application of the funds to the outstanding balance. Additionally, please confirm that the Cooperative will <u>not</u> terminate the proprietary lease.

Sincerely,

Adam L. Bliss

ALB: cat
*Enclosure (check no. 9043)*
Cc: *Bank of America, N.A.*

DEFT./RESP.
EXHIBIT 51
CASE#_____

One Logan Square 130 North 18th Street Philadelphia, PA 19103-6998
www.BlankRome.com

136045.99999/12226665v.1
Boca Raton • Cincinnati • Hong Kong • Houston • Los Angeles • New York • Philadelphia • Princeton • Shanghai • Washington • Wilmington

RE: Urgent Fw: Emailing: Bank of America Payment 611.pdf, 08.28.12 Hapugalle-Copy Ltr to Counsel
8-28-12.pdf

From: 'chai hapugalle' <chai_hapugalle@yahoo.com>
To: 'Adam L Bliss' <ABliss@BlankRome.com>
Cc: 'CraigTimberlake' <CTimberlake@BlankRome.com>

Friday, October 12, 2012 12:20 PM

Dear Attorney Bliss

I have got a notice from the Chastleton lawyer that they are going to revoke my membership for non paymnet
of coop dues if I dont pay by a certain day

I am still waiting for the confirmation that you got from the Chastleton to say that they will give back my apt if
you paid 11K

Can you please send this confirmation ASAP as things are really messy right now regarding revoking
membership, reinstating membership and then again trying to revoke membership

Please confirm ASAP today
Chaitri Hapugalle (Chai)
(202) 286-9085

— On Wed, 9/19/12, chai hapugalle <chai_hapugalle@yahoo.com> wrote:

> From: chai hapugalle <chai_hapugalle@yahoo.com>
> Subject: RE: Urgent Fw: Emailing: Bank of America Payment 611.pdf, 08.28.12 Hapugalle-Copy Ltr to
Counsel 8-28-12.pdf
> To: "Adam L Bliss" <ABliss@BlankRome.com>
> Cc: 'CraigTimberlake' <CTimberlake@BlankRome.com>
> Date: Wednesday, September 19, 2012, 4:23 PM
> Dear Attorney Bliss
>
> When you gave the money to the Chastleton you had
> indicated in your letter that they need to confirm that I
> will get my apt back.
>
> What kind of confirmation did you get from the Chastleton
>
> Can you also give me copies of the correspondences between
> the Chastleton and your firm. How did the Chastleton get
> through to you without going through bank of america first.
>
>
> Thank you
> Chaitri Hapugalle
>
> — On Fri, 9/7/12, Bliss, Adam L. <ABliss@BlankRome.com>
> wrote:

> > > From: Bliss, Adam L. <ABliss@BlankRome.com>
> > > Subject: RE: Urgent Fw: Emailing: Bank of America
> Payment 611.pdf, 08.28.12 Hapugalle-Copy Ltr to Counsel
> 8-28-12.pdf
> > > To: "chai hapugalle" <chai_hapugalle@yahoo.com>
> > > Cc: "Timberlake, Craig" <CTimberlake@BlankRome.com>
> > > Date: Friday, September 7, 2012, 10:30 PM
> > > Ms. Hapugalle,
> >
> > > Once again, the Loan Security Agreement that your duly
> > > appointed attorney-in-fact signed in connection with
> your
> > > loan expressly authorized your lender to pay your
> delinquent
> > > coop bill.  Because you failed to keep current on
> your
> > > payments to the cooperative, the cooperative was
> empowered
> > > to take action that would have extinguished Bank of
> > > America's secured interest in your property.  Bank of
> > > America's payment was absolutely and immediately
> necessary
> > > to protect that interest.
> >
> > > Bank of America's payment does not prohibit you from
> > > pursuing any dispute of fees or claim of
> discrimination
> > > against the cooperative that you may wish to pursue.
> > > If it is determined that fees were improperly charged
> to
> > > your account, the cooperative may issue you or Bank of
> > > America a refund.  If that refund is issued to Bank
> of
> > > America, Bank of America will credit that refund to
> the
> > > balance of the amount advanced on your behalf.
> >
> > > This firm's representation of Bank of America does not
> > > extend to cover any modification or other workout
> > > activities.  As such, to the extent your request that
> > > Bank of America "sort of the mortgage payments"
> constitutes
> > > a request for workout options, please contact Bank of
> > > America's Home Retention Division at (800) 669-6650.
> >
> > > We must decline your request that we provide you all
> > > correspondence between our office and Bank of
> America.
> > > Such action would violate our ethical obligation of
> > > confidentiality.
> >
> >

# RADDATZ LAW FIRM, PLLC

1212 NEW YORK AVENUE, NW
SUITE 850
WASHINGTON, DC 20005

BLANK ROME

OCT 1 5 ...

COP...

(202) 466-8001
(202) 332-6700 fax
www.creditors-law.com

Ms. Chaitri Hapugalle
1701 16th Street, NW Unit 611
Washington, DC 20009

VIA FIRST-CLASS AND
REGISTERED MAIL.[1]

October 9, 2012

### NOTICE OF PAYMENT DEFAULT UNDER OCCUPANCY AGREEMENT,
### OPPORTUNITY TO CORRECT/CURE
### INTENT TO REVOKE PROPRIETARY DOCUMENTS[2]

Please take notice that you are in default in paying monthly/special assessments for the cooperative real property located at 1701 16th Street, NW Unit 611, Washington, DC 20009 ("Premises") pursuant to your Occupancy Agreement, dated August 27, 2007. The "Corporation", Chastleton Cooperative Association, Inc., hereby provides you with notice that the event(s) of default are detailed as follows:

Default(s):

1.    Non-Payment of Cooperative Fees ($1,404.13/mo.) and Late Fees ($70.21/mo.), subtotaling $2,948.68 (September, 2012 - October, 2012), plus Legal Fees of $412.50, for a total of $3,361.18 through October 31, 2012.

To Correct/Cure:

1.    Pay the sum of $3,361.18, plus any accrued cooperative monthly fees and late fees to the Corporation by October 22, 2012.

Should said default(s) not be corrected/cured by October 22, 2012, the Corporation's Board of Directors ("Board") may terminate your Occupancy Agreement and Stock Certificate at its next meeting. Should you wish to be heard by the Board on this matter, you may do so on October 23, 2012 at 7:30 p.m. in the ballroom facility at 1701 16th Street, NW Washington, DC 20009 (next meeting date). Should your Occupancy Agreement and Stock Certificate be terminated aforesaid, notice is hereby given that you shall thereupon quit and surrender the Premises to the Corporation. Should you fail to do so, the Corporation will proceed with appropriate measures to regain possession of the Property.

Mark R. Raddatz, Esq.
Raddatz Law Firm, PLLC
Attorney for Corporation
1212 New York Avenue, NW Ste. 850
Washington, DC 20005
(202) 466-8001

---

[1] With copy to Bank of America, 200 South College Street, Charlotte, NC 28202, Bank of America, 900 West Trade Street, Charlotte, NC 28255, and Adam Bliss, Esq, Craig Timberlake, Blank Rome, One Logan Square, 130 18th Street, Philadelphia, PA 19103-6998.
[2] "Proprietary Documents" defined as the Occupancy Agreement and Stock Certificate.